RICHARD HOWARD WORKMAN, Plaintiff v. NANCY ROBERTSON WORKMAN, Defendant

No. 9010DC1079

(Filed 7 July 1992)

**1. Divorce and Separation § 168 (NCI4th)— equitable distribution—pension benefits—Seifert formula**

In an equitable distribution action involving pension benefits, there was no basis for rejecting the formula or reasoning in *Seifert v. Seifert*, 82 N.C. App. 329. Although N.C.G.S. § 50-20(b)(3)c was amended after *Seifert*, courts should not presume that the legislature intended a repeal by implication and the 1987 amendment did not change the portion of the statute scrutinized in *Seifert*.

**Am Jur 2d, Divorce and Separation § 905.**

**Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.**

**2. Divorce and Separation § 168 (NCI4th)— equitable distribution—pension benefits—not explicitly limited to 50%**

The trial court did not err in an equitable distribution action by failing to explicitly limit defendant's share of plaintiff's retirement benefit to 50% where defendant's percentage could only decrease. N.C.G.S. § 50-20(b)(3).

**Am Jur 2d, Divorce and Separation § 905.**

**Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.**

**3. Divorce and Separation § 168 (NCI4th)— equitable distribution—pension benefits—joint and survivor benefits**

The trial court did not err in an equitable distribution action by awarding defendant joint and survivor benefits and pre-retirement benefits where the provision that defendant shall not receive more upon plaintiff's death than during his lifetime implicitly fulfills the statutory requirement that the nonemployee spouse may not receive more than 50% of the benefits; the joint and survivor benefit plan could vest before

WORKMAN v. WORKMAN

[106 N.C. App. 562 (1992)]

plaintiff's death under plaintiff's plan; N.C.G.S. § 50-20(b)(3) (Cum. Supp. 1991) quite clearly includes survivor benefits; and the trial court's order reflects the plan's prohibition against the nonemployee spouse naming a beneficiary to receive any existing unpaid balance.

**Am Jur 2d, Divorce and Separation § 905.**

**Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.**

4. **Divorce and Separation § 168 (NCI4th)— equitable distribution — pension benefits — evidence**

The trial court did not err in an equitable distribution action involving retirement benefits by excluding the separation agreement because the method of division was in no way dependent upon the terms of the separation agreement; the court properly excluded evidence concerning defendant's education and ability to support herself because the parties had agreed to an equal division and such factors are to be considered only if the parties disagreed on whether the property is to be divided equally or unequally; the court properly excluded evidence of alimony payments because the court's sole task was to equitably distribute the husband's IBM benefits; and the trial court did not err by admitting letters from IBM concerning the proposed Qualified Domestic Relations Order where plaintiff's own expert testified that he used the letters in forming his opinion and in advising plaintiff's counsel based upon material in the letters. N.C.G.S. § 8C-1, Rules 401 and 705.

**Am Jur 2d, Divorce and Separation § 905.**

**Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.**

APPEAL by plaintiff from Order by *Judge Fred M. Morelock* entered 6 April 1990 in WAKE County Superior Court. Heard in the Court of Appeals 8 October 1991.

WORKMAN v. WORKMAN

[106 N.C. App. 562 (1992)]

*Womble Carlyle Sandridge & Rice, by Susan D. Crooks, for plaintiff appellant.*

*Tharrington, Smith & Hargrove, by Carlyn G. Poole; Wyrick, Robbins, Yates & Ponton, by Robert A. Ponton, Jr., for defendant appellee.*

COZORT, Judge.

Plaintiff-husband appeals from Qualified Domestic Relations Order (QDRO) dividing husband's pension benefits based upon the benefits accumulated during the marriage. We affirm.

Husband and wife were married 3 April 1965, separated on 1 July 1987, and divorced on 7 September 1988. The parties agreed to a division of all the marital property except for the husband's IBM pension and retirement benefits, survivor's benefits, and pre-retirement benefits. The parties agreed that wife was entitled to one-half of the marital portion. The parties further agreed to submit the disputed issues to the district court for resolution. On 6 April 1990 the district court entered a QDRO ordering the following:

1. As a part of the equitable distribution of the parties' marital property, defendant shall be entitled to an assignment of a part of plaintiff's retirement benefit plan to be calculated as follows:

(a) 22.25 years (representing the length of the parties' marriage until the date of their separation contemporaneous with plaintiff's IBM employment) divided by the total number of years of plaintiff's actual employment earning the pension and retirement benefits times 50%.

(b) The percentage set forth within paragraph (a) shall be applied to the total retirement benefit to be received by the plaintiff from the IBM Retirement Plan before any reduction for purchase of a joint and survivor annuity for any party other than the defendant. . . .

* * * *

2. Defendant shall receive directly from the IBM Retirement Plan a portion of the plaintiff's monthly retirement benefit based upon the percentage formula described in paragraph 1(a) above. Additionally, defendant shall participate in any improvements to and/or increases in the retirement benefit

**WORKMAN v. WORKMAN**

[106 N.C. App. 562 (1992)]

payments received by the plaintiff after the entry of this order. Defendant's entitlement to participate in these improvements and/or increases shall be based upon the formula set out in paragraph 1(a) above.

3. Defendant shall begin to receive the above percentage of plaintiff's retirement benefits at the time plaintiff begins to receive his retirement benefits.

4. In the event plaintiff dies prior to plaintiff beginning to receive retirement benefits *and* the plaintiff is survived by defendant, then the defendant shall be a beneficiary of the Plan's pre-retirement spouse protection option (PRSP) with benefits payable to the surviving spouse of the plaintiff. Defendant shall participate in this PRSP option only with respect to the portion of plaintiff's vested benefits earned during the marriage of the parties; the defendant to be treated as the plaintiff's surviving spouse for the purposes of Section 401(a)(11) and 417 of the Internal Revenue Code of 1986 as to the portion of vested benefits earned by the plaintiff during the marriage of the parties. Defendant shall receive that percentage (to the nearest whole percentage) of the benefits paid under the PRSP as determined by the formula set out in paragraph 1(a) above.

5. Defendant shall remain continuously covered by the joint and survivor annuity option of the plaintiff's Retirement Benefit Plan which option shall provide for continued monthly payments to the defendant in the event she is predeceased by the plaintiff *and* the plaintiff dies after be [*sic*] begins to receive retirement benefits under the Retirement Plan. For the purposes of the survivor annuity option the defendant shall be treated as a surviving spouse for the purposes of Section 401(a)(11) and Section 417 of the Internal Revenue Code of 1986 as to the portion of the vested retirement benefits earned by the plaintiff during the marriage of the parties and the plaintiff shall not be entitled to elect a joint and survivor annuity option for the benefit of the defendant which will result in the defendant receiving a lesser payment after the death of the plaintiff than she received before the death of the plaintiff. . . . The defendant shall receive that percentage (to the nearest whole percentage) of the benefits paid under the joint and survivor annuity determined by the formula as follows:

22.25 years (representing the length of the parties' marriage until the date of their separation contemporaneous with the plaintiff's IBM employment) divided by a numeral representing the total period of plaintiff's actual employment with IBM earning pension and retirement benefits. In no event shall the benefit paid to the defendant following the death of the plaintiff exceed the amount which defendant was receiving during the period in which the plaintiff was alive and the defendant was receiving benefits pursuant to the IBM Retirement Plan as the alternate payee except for those plan improvements and/or increases to which defendant is entitled. The costs of this joint and survivor annuity protection to be maintained for the benefit of the defendant shall be calculated separately for the defendant based solely upon defendant's age. At the date of the entry of this order the defendant is 47 years old. . . .

6. Defendant shall not name a surviving beneficiary under the Plan; should defendant predecease plaintiff, her share of benefits under the Plan shall revert to plaintiff.

\* \* \* \*

8. Defendant is entitled to a portion of plaintiff's IBM Retirement Plan benefits in the manner described above provided that:

(a) Payment of said sum does not require the Plan to provide any type or form of benefit or any option not otherwise provided under the Plan.

(b) This order does not require the Plan to pay out more benefits to the payee than the participant is entitled to.

(c) This order does not require the Plan to pay any benefits already required to be paid to another alternate payee under a previous QDRO.

On appeal, plaintiff-husband presents three issues: (1) whether the QDRO violates N.C. Gen. Stat. § 50-20 (Cum. Supp. 1991) by granting defendant benefits in excess of those allowed by law, (2) whether the trial court erred in refusing to allow evidence of the parties' separation agreement, and (3) whether the trial

court erred in admitting into evidence letters from the IBM plan administrator relating to draft QDROs.

[1]   N.C. Gen. Stat. § 50-20(b)(1) (Cum. Supp. 1991) defines marital property to include "all vested pension, retirement, and other deferred compensation rights." N.C. Gen. Stat. § 50-20(b)(3) provides:

> The distributive award of vested pension, retirement, and other deferred compensation benefits may be made payable:
>
> a. As a lump sum by agreement;
>
> b. Over a period of time in fixed amounts by agreement;
>
> c. As a prorated portion of the benefits made to the designated recipient at the time the party against whom the award is made actually begins to receive the benefits; or
>
> d. By awarding a larger portion of other assets to the party not receiving the benefits, and a smaller share of other assets to the party entitled to receive the benefits.
>
> . . . The award shall be determined using the proportion of time the marriage existed, (up to the date of separation of the parties), simultaneously with the employment which earned the vested pension, retirement, or deferred compensation benefit, to the total amount of time of employment. The award shall be based on the vested accrued benefit, as provided by the plan or fund, calculated as of the date of separation, and shall not include contributions, years of service or compensation which may accrue after the date of separation. The award shall include gains and losses on the prorated portion of the benefit vested at the date of separation. No award shall exceed fifty percent (50%) of the benefits . . . .

*Id.* Prior to the 1987 amendment the statute provided in pertinent part:

> The award shall be based upon the proportion of the amount of time the marriage existed, simultaneously with the employment which earned the vested pension or retirement rights to the total amount of time of employment. Said award shall not be based on contributions made after the separation, but

shall include any growth on the amount of the pension or retirement account vested at the time of the separation.

N.C. Gen. Stat. § 50-20(b)(3) (1985).

In *Seifert v. Seifert*, 82 N.C. App. 329, 346 S.E.2d 504 (1986), *aff'd*, 319 N.C. 367, 354 S.E.2d 506 (1987), we addressed two methods for determining the division of pension and retirement benefits. Plaintiff-wife brought action for equitable distribution of marital property. Although both parties had vested pensions and retirement rights, the trial court considered only the division of the husband's pension and retirement benefits. The trial court first determined that, if the defendant had retired on the date of separation, he would have been entitled to receive 62.5% of his basic monthly pay. The trial court then determined that defendant had served in the United States Army for 24 years and 11 months, and for 22 years and 3 months of that time defendant was married to plaintiff. Next, the trial court determined that 87% of defendant's pension and retirement benefits were earned during the marriage. Taking the life expectancy of defendant and a rate of return of investment, the trial court calculated the present lump sum value of defendant's pension and retirement benefits. The trial court concluded that an equal division of the property would be equitable. In addition to the full amount of her vested pension, the trial court awarded plaintiff a lump sum as the present value of defendant's vested military pension to be distributed to plaintiff in monthly installments once defendant began receiving his retirement pay.

On appeal we reversed. We first discussed the advantages and disadvantages of the two primary methods of evaluating and distributing pension and retirement benefits—present discounted value method and fixed percentage method. Under the first method, the trial court must calculate "the present value of the vested pension, as of the date of separation . . . discounted for interest in the future and taking into account the employee spouse's life expectancy." *Seifert*, 82 N.C. App. at 334, 346 S.E.2d at 506-07. The trial court must further calculate "the percentage of present value attributable to the marriage period . . . and the appropriate equitable share to which the nonemployee spouse is entitled." *Id.* at 334, 346 S.E.2d at 507. Under the second method

the court should award to the nonemployee spouse a percentage of that portion of the pension benefits attributable to the

**WORKMAN v. WORKMAN**

[106 N.C. App. 562 (1992)]

marriage period. The portion attributable to the marriage is determined by multiplying the net pension benefits by a fraction, the numerator of the fraction being the total period of time the employee spouse was a participant in the plan within the marriage period (from date of marriage to date of separation) and the denominator being the total period of the employee spouse's participation in the plan.

*Id.* at 336, 346 S.E.2d at 508. We found the latter method consistent with N.C. Gen. Stat. § 50-20(b)(3) (1985), which prohibited the award from being based on contributions after separation and required that any growth on the amount of the pension or vested retirement account be included in the award. We noted that the fixed percentage method has the advantages of avoiding any risk of paying the nonemployee spouse for rights which did not mature, permitting the nonemployee spouse to share in increases in post-separation retirement benefits based in marital effort, and avoiding prolonged hearings with actuarial evidence and expert testimony. We did not order one method to the exclusion of the other; rather, we left the decision to the discretion of the trial courts. In the case before us, we found that the trial court "impermissibly utilized a present value in ordering a deferred payment," *Seifert,* 82 N.C. App. at 338, 346 S.E.2d at 509, which, "in effect, operated as a double reduction: plaintiff received a *discounted* value for immediate distribution but nevertheless was required to wait to receive payment until, if and when, the defendant reached retirement and began receiving benefits." *Id.* (emphasis in original). Upon this basis, we reversed and remanded.

On appeal, the North Carolina Supreme Court affirmed. The Court agreed with the majority of the Court of Appeals that N.C. Gen. Stat. § 50-20(b)(3) (1985) did not prohibit use of the present value method. The Court reiterated:

Under the fixed percentage method, deferral of payment is possible without unfairly reducing the value of the award. The present value of the pension or retirement benefits is not considered in determining the percentage to which the nonemployee spouse is entitled. Moreover, because the nonemployee spouse receives a percentage of the benefits actually paid to the employee spouse, the nonemployee spouse shares in any growth in the benefits. . . . *Yet, the formula gives the nonemployee spouse a percentage only of those*

> benefits attributable to the period of the marriage, and that
> spouse does not share in benefits based on contributions made
> after the date of separation.

*Seifert v. Seifert*, 319 N.C. 367, 370-71, 354 S.E.2d 506, 509 (emphasis added). Finally, the Court noted that the fixed percentage method does not "violate the mandate that the court must identify the marital property, ascertain its net value, and then equitably distribute it," *Seifert*, 319 N.C. at 371, 354 S.E.2d at 509, because "valuation of these benefits, together with other marital property, is necessary to determine the percentage of these benefits that the nonemployee spouse is equitably entitled to receive." *Id.*

Plaintiff challenges the trial court's use of the *Seifert* formula on two grounds: (1) that the legislature intended to modify the *Seifert* decision by amending the language of N.C. Gen. Stat. § 50-20(b)(3); and (2) that the mechanical application of the *Seifert* formula works an injustice and awards defendant retirement benefits accruing to plaintiff after the date of separation based on his post-separation contributions, years of service, and compensation. We disagree. First, courts should not presume that the legislature intended a repeal by implication. *State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1979). Second, the 1987 amendment did not change the portion of the statute scrutinized in *Seifert* — N.C. Gen. Stat. § 50-20(b)(3)(c) (1985) — permitting benefits to be made' payable "[a]s a prorated portion of benefits." We find no inconsistency in the 1985 statutory language providing that "[s]aid award shall not be based on contributions made after the separation, but shall include any growth on the amount of the pension or retirement account vested at the time of the separation," and the 1987 statutory language providing that "the award . . . shall not include contributions, years of service or compensation which may accrue after the date of separation. The award shall include gains and losses on the prorated portion of the benefit vested at the date of separation." In both versions the award is based on the benefits vested at the time of separation and must include any "growth" or "gains and losses" arising out of the vested benefits. Neither version permits an award based on *contributions* after the date of separation. The *Seifert* formula includes only the benefits accumulated during the marriage. The denominator of the fraction, the total period of the employee spouse's participation in the plan, is one component of the formula designed to reflect the "gains and losses" arising out of the vested benefit at the time of separa-

tion. The award itself does not include "contributions, years of service or compensation which may accrue after the date of separation." Since the amended statute is consistent in pertinent part with the former statute, we find no basis for rejecting the formula or reasoning in *Seifert*. (We note that N.C. Gen. Stat. § 50-20 was amended again in the 1991 Session of the North Carolina General Assembly; however, the subsections at issue here were not changed. (1991 N.C. Session Laws 635)). Accordingly, plaintiff's first two arguments fail.

[2] Plaintiff also contends that the trial court awarded defendant benefits in excess of the 50% limit set forth in N.C. Gen. Stat. § 50-20(b)(3). First, plaintiff argues that the trial court's order does not limit defendant's retirement benefits award to 50%. We do not agree. The order provides in part that defendant "shall be entitled to an assignment of a part of plaintiff's retirement benefit plan" and "shall begin to receive the . . . percentage of plaintiff's retirement benefit at the time plaintiff begins to receive his retirement benefits." We agree with defendant that use of the fixed percentage formula prohibits defendant from receiving more than fifty percent of the retirement benefits. Defendant and plaintiff had been separated for three years prior to the entry of the QDRO. At that time, defendant's share of the pension benefit was 42.8%. This percentage is calculated by dividing 22.25 years (representing the length of the parties' marriage until the date of their separation contemporaneous with plaintiff's IBM employment) by 26, the total number of years of plaintiff's actual employment earning the pension and retirement benefits times 50%. The percentage is applied to plaintiff's "total retirement benefit," with no reduction for purchase of joint and survivor benefit. Since defendant's percentage can only decrease, the trial court did not err in failing to explicitly limit defendant's share to 50% in the order.

[3] Plaintiff further contends that the trial court improperly awarded defendant joint and survivor annuity benefits and pre-retirement benefits. The trial court ordered in pertinent part:

10. Defendant shall remain continuously covered by the joint and survivor annuity option of the plaintiff's Retirement Benefit Plan which option shall provide for continued monthly payments to the defendant in the event she is predeceased by the plaintiff *and* the plaintiff dies after he begins to receive retirement benefits under the Retirement Plan. . . . The plain-

tiff shall not be entitled to elect a joint and survivor annuity option for the benefit of the defendant which will result in the defendant receiving a lesser payment after the death of the plaintiff than she received before the death of the plaintiff. . . .

. . . In no event shall the benefit paid to the defendant following the death of the plaintiff exceed the amount which the defendant was receiving during the period in which the plaintiff was alive and the defendant was receiving benefits pursuant to the IBM Retirement Plan as the alternate payee, except for those plan improvements and/or increases to which defendant is entitled. . . .

11. In the event plaintiff dies prior to plaintiff's beginning to receive retirement benefits *and* the plaintiff is survived by defendant, then the defendant shall be a beneficiary of the Plaintiff's pre-retirement spouse protection option (PRSP) with benefits payable to the surviving spouse of the plaintiff. Defendant shall participate in this PRSP option only with respect to the portion of plaintiff's vested benefits earned during the marriage of the parties . . . . (Emphasis in original.)

We find the trial court's order consistent with N.C. Gen. Stat. § 50-20 (Cum. Supp. 1991). With respect to joint and survivor benefits, the provision that defendant shall not receive more upon plaintiff's death than during his lifetime implicitly fulfills the statutory requirement that the nonemployee spouse may not receive more than 50% of the benefits. We disagree with plaintiff that the joint and survivor benefit could not vest until his death. Under the IBM Plan, if plaintiff had died on 1 July 1987 defendant would have received benefits under the PRSP option. Moreover, the statutory language quite clearly includes survivor benefits:

In the event the person receiving the award dies, the unpaid balance, if any, of the award shall pass to the beneficiaries of the recipient by will, if any, or by intestate succession. In the event the person against whom the award is made dies, the award to the recipient shall remain payable to the extent permitted by the pension or retirement system or deferred compensation plan or fund involved.

N.C. Gen. Stat. § 50-20(b)(3) (Cum. Supp. 1991). With respect to retirement benefits, the IBM Plan indicates that pre- and post-

retirement benefits are available to former spouses of employees. The trial court's order reflects the IBM Plan's prohibition against the nonemployee spouse naming a beneficiary to receive any existing unpaid balance. We find no error in the trial court's awarding defendant joint and survivor benefits and pre-retirement benefits. Thus we reject plaintiff's argument.

[4] Plaintiff next assigns as error the trial court's exclusion of the parties' separation agreement and failure "to take into consideration the impact of relevant facts in the determination of an appropriate qualified domestic relations order." Plaintiff argues that in determining defendant's share of the IBM benefits the trial court should have taken into consideration the parties' intent in the separation agreement to provide defendant with decreasing income up to plaintiff's retirement. We disagree. In the divorce judgment, the trial court found:

> [T]he parties have agree that a QDRO (qualified domestic relations order) shall be entered in this matter making a division of the marital portion of the IBM pension and retirement benefits, and the survivor's benefits and pre-retirement survivor's benefits, to which the Defendant may be entitled, if any. . . . This subsequent order shall further address whether the Defendant is entitled to any post-retirement or pre-retirement survivor's benefits from IBM and whether, if she is so entitled, there should be an adjustment to her one-half marital portion to reflect the entitlement to such benefits.

The district court undertook to determine defendant's share of the marital portion of the IBM benefits. In calculating defendant's share, the district court had no need to consider the separation agreement, since the method of division was in no way dependent upon the terms of the separation agreement. We find the trial court also properly excluded evidence concerning defendant's education and ability to support herself, because such factors are to be considered only if the parties disagreed whether the property is to be divided equally or unequally. *See Miller v. Miller*, 97 N.C. App. 77, 387 S.E.2d 181 (1990). Here, the parties agreed to an equal division.

Plaintiff contends that the trial court erred in excluding evidence of alimony payments because under the QDRO defendant will receive a double benefit since "defendant would receive her share of plaintiff's pension as a property ,division and another part of his pension

as alimony." N.C. Gen. Stat. § 50-20(f) (Cum. Supp. 1991) states that "The court shall provide for an equitable distribution without regard to alimony for either party . . . ." Here, the trial court's sole task was to equitably distribute husband's IBM benefits. We find the trial court properly excluded evidence of alimony payments.

Lastly, plaintiff contends that the trial court erred in admitting into evidence letters from IBM concerning proposed QDRO. Plaintiff's claim that the letters were irrelevant has no merit. Plaintiff's own expert testified that he used the letters in forming his opinion and that he advised plaintiff's counsel based upon material in the letters. We find the letters admissible pursuant to N.C. Gen. Stat. § 8C-1, Rule 401 (1988), defining relevant evidence to mean evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, and N.C. Gen. Stat. § 8C-1, Rule 705 (1988), requiring experts to disclose underlying facts and data for their opinions.

For the reasons set forth above, the trial court's order is

Affirmed.

Judges ARNOLD and LEWIS concur.