NANCY BISHOP v. HARRY H. BISHOP, SR.

No. 9329DC288

(Filed 1 March 1994)

1. **Divorce and Separation § 142 (NCI4th)— defined benefit pension plan—method of valuation**

The Court of Appeals adopts the following method for evaluating defined benefit pension plans: (1) the trial court must calculate the amount of monthly pension payment the employee, assuming he retired on the date of separation, will be entitled to receive at the later of the earliest retirement age or the date of separation; (2) the trial court must determine the employee-spouse's life expectancy as of the date of separation and use this figure to ascertain the probable number of months the employee-spouse will receive benefits under the plan; (3) the trial court, using an acceptable discount rate, must determine the then-present value of the pension as of the later of the date of separation or the earliest retirement date; (4) the trial court must discount the then-present value to the value as of the date of the separation; and (5) the trial court must reduce the present value to account for contingencies such as involuntary or voluntary employee-spouse termination and insolvency of the pension plan, and this calculation rests within the sound discretion of the trial court.

**Am Jur 2d, Divorce and Separation §§ 948, 949.**

BISHOP v. BISHOP

[113 N.C. App. 725 (1994)]

2. **Divorce and Separation § 142 (NCI4th)— defined benefit pension plan—method of valuation**

In an equitable distribution of defendant husband's defined benefit pension, the trial court (1) correctly assumed that defendant ceased working for DuPont on the date of separation, (2) did not consider, as it must, any projected "gains or losses" on the portion of the pension which was vested as of the date of separation, but no evidence was presented on this issue, (3) and erred in valuing the pension on the basis that defendant would not begin drawing his pension until age 65, since the computations of the value of the pension must be made based on age 50 which was the earliest retirement date.

**Am Jur 2d, Divorce and Separation §§ 948, 949.**

**Divorce: equitable distribution doctrine. 41 ALR4th 481.**

3. **Divorce and Separation § 142 (NCI4th)— military retirement pay for disability—separate property classification proper**

Evidence supported the trial court's finding that military retirement pay was for a military service related disability, and this finding supported the conclusion that the military income was not marital property.

**Am Jur 2d, Divorce and Separation § 909.**

**Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.**

Appeal by plaintiff from order entered 20 August 1992 in Transylvania County District Court by Judge Robert S. Cilley. Heard in the Court of Appeals 12 January 1994.

*Averette & Barton, by Donald H. Barton, for plaintiff-appellant.*

*Law Office of Paul B. Welch, III, by Paul B. Welch, III, and Susan Fosmire Reid, and Jack H. Potts, for defendant-appellee.*

GREENE, Judge.

Nancy Bishop (plaintiff) appeals from the entry of an order of equitable distribution.

Prior to the hearing on equitable distribution in this case, plaintiff and Harry H. Bishop, Sr. (defendant), resolved many of the equitable distribution issues by consent. At the hearing, the trial court was asked to classify, value, and distribute three assets: defendant's military retirement, defendant's DuPont retirement, and defendant's DuPont incentive plan. The trial court concluded that the DuPont retirement plan was a marital asset and that the military retirement was defendant's separate property. The trial court further concluded that an equal division of the marital property was equitable and entered the following order:

> 2. The Defendant's DuPont retirement account shall be and remain the property of the defendant.

> 3. The Defendant is ordered to pay to the Plaintiff the sum of $7,785 not later than the closing date on the sale of the marital home, or not later than January 20, 1993, whichever date arrives first. That sum shall bear interest at the legal rate from the date of the filing of this Order to the date of payment.

In support of the conclusions and the order, the trial court entered the following relevant findings of fact:

> 1. The parties . . . separated on December 26, 1990 . . . .

> 2. Defendant is a white male who was 48 years old on DOS [date of separation] . . . . The valuations given below require that an estimate be made of Defendant's lifespan after DOS, and for that purpose, the Court has made use of the 1991 Statistical Abstract of the U.S., 1991 edition, which indicates the average remaining lifespan for a 48 year old white American male to be thirty years. Acknowledging that different tables give different figures, from 27 years (N.C. General Statutes) to 34 years (I.R.S. tables), the Court prefers the Statistical Abstract tables because they give more reliable figures when the race and gender are known.

> 3. In addition to needing an estimate of Defendant's lifespan, the valuations given below require an interest rate. Although the rate for multi-year certificates of deposit on DOS was 7.6%, the trend in rates at that time was downward. For that reason, the Court finds the figure of 7.5% to be appropriate for the calculations used in arriving at the valuations given below.

4. Defendant was a member of the U.S. Air Force for 141 months, of which 108 were during the parties' marriage. He receives a monthly check from the U.S. Government, purporting to be for service-related disability. The amount of the check was $464 on the DOS; it has since been raised somewhat, but using the $464 figure, and the life span and interest rate noted above, the Court finds that the DOS value of Defendant's military disability income was $66,360. The Court calculated this value using the "Present Worth of 1 Per Period" column in the financial tables in the AmJur Desk Book.

5. Defendant is employed by DuPont. He began work there during the parties' marriage. . . .

6. DuPont maintains a defined benefit retirement plan, in which Defendant was fully vested on DOS[.] In valuing this asset, the Court has assumed:

(a) That Defendant ceased working for DuPont on DOS, without penalty.

(b) That Defendant begins drawing his pension at age 65 (in August, 2007), which is the earliest date on which he can do so without suffering a substantial reduction in monthly payments.

Granting these two assumptions, Defendant's pension from DuPont will be $477 per month, beginning in August, 2007. The Court has used that figure and date, combined with the lifespan and interest rate mentioned above, and (again using the AmJur financial tables) has calculated the value of the right to receive $477 per month for thirteen years, which is $47,445. The Court has then calculated the value on DOS of the right to receive $47,445 in August of 2007. That latter value, $13,724, is the value of Defendant's pension on DOS. The Court notes that if instead of assumption (a), it is assumed that Defendant continued to work for DuPont to age 65, then his retirement income would be $958 per month, and the value of that pension on DOS would be $27,563, instead of the figure found above.

Evidence in the record shows that the DuPont pension plan is "entirely noncontributory on the part of employees and no identifiable contributions by DuPont are made on behalf of individual employees or allocated to, or set aside for any specific individual. Plan benefits are payable only in the form of a life annuity, general-

ly for the life of the employee." On the date of separation, 26 December 1990, defendant's DuPont pension was vested. If defendant had terminated his employment with DuPont on 26 December 1990, he would have been entitled to a life-time monthly pension payment of $477 at age sixty-five or beginning in August 2007. Under the DuPont plan defendant was entitled to "retire and receive a reduced pension . . . as early as 30 July 1992 or at age 50." Had defendant terminated his employment on 26 December 1990 and elected early retirement at age fifty he would have received a life-time monthly pension payment of $120. There was also evidence that defendant, a member of the United States Air Force for 141 months, was receiving from the Defense Finance and Accounting Service a $481 monthly retirement check "based on Service related disability retirement."

---

The issues presented are whether (I) the DuPont pension was correctly valued, and (II) the defendant's military income is marital property.

I

In North Carolina, pursuant to N.C. Gen. Stat. § 50-20, pensions, retirement benefits, and other deferred compensation rights (hereinafter referred to as pensions), must, like other assets, be classified and valued. If the pension is classified as marital property it must be distributed between the parties to the marriage. N.C.G.S. § 50-20(a) (Supp. 1993). If the pension is classified as separate property it must be considered as a distributional factor in distributing the marital property. N.C.G.S. § 50-20(c)(5) (Supp. 1993).

### Classification

A "vested" pension "acquired by either spouse . . . during the course of the marriage and before the date of the separation" is marital property. N.C.G.S. § 50-20(b) (Supp. 1993). A formula known as the coverture fraction is used to determine the portion of the employee-spouse's pension which was acquired during the marriage. N.C.G.S. § 50-20(b)(3); 3 William M. Troyan et al., *Valuation & Distribution of Marital Property* § 45.06[5] (1987) (hereinafter *Troyan*). The numerator of the coverture fraction represents the total number of years of marriage, up to the date of separation, which occurred "simultaneously with the employment which earned the vested pension." N.C.G.S. § 50-20(b)(3) (Supp. 1993). The

denominator represents the total years of employment during which the pension accrued. *Troyan* § 45.06[5]. A pension which is not vested on the date of separation is classified as the separate property of the employee-spouse. N.C.G.S. § 50-20(b)(2).

## Valuation

The method for valuing a pension depends on whether the pension is a defined benefit plan or a defined contribution plan. These are the two most common of the funded pension programs. *Troyan* § 45.06. A defined contribution plan is a pension "plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 26 U.S.C.A. § 414(i) (Supp. 1993). A defined benefit plan is defined by the Internal Revenue Code as "any plan which is not a defined contribution plan." 26 U.S.C.A. § 414(j). The benefit under such a plan is generally determined "without reference to contributions and is based on factors such as years of service and compensation received." *Seifert v. Seifert*, 82 N.C. App. 329, 333, 346 S.E.2d 504, 506 (1986), *aff'd*, 319 N.C. 367, 354 S.E.2d 506 (1987).

Valuing a defined contribution plan merely requires determining the value of the employee-spouse's account in existence on the date of separation. *Troyan* § 45.06[3]. Valuing a defined benefit plan on the other hand is "fraught with uncertainties." Lawrence J. Golden, *Equitable Distribution of Property* § 7.13, at 228 (1983) (hereinafter *Golden*).

> First, whether benefits are received at all is contingent on the employee serving the requisite number of years with the employer and on the plan being solvent. The total amount of such benefits will depend on how long the employee survives after retirement. Further . . . future dollars must be translated into present value.

*Id.* Nonetheless, methods for valuing defined benefit plans have been developed by accountants and actuaries and accepted by the courts. *See Troyan* § 45.23; *Golden* § 7.13; Barth H. Goldberg, *Valuation of Divorce Assets* § 9.5 (1984). Having reviewed these methods and the methods presently utilized by some of our district court judges, *see* Clarence E. Horton, Jr., *Principles of Valuation*

*in North Carolina Equitable Distribution Actions*, Institute of Government, Special Series No. 10 (April 1993 Rev.), and believing that consistency in valuation methods is important, we adopt the following method for evaluating defined benefit pension plans.

[1]   First, the trial court must calculate the amount of monthly pension payment the employee, assuming he retired on the date of separation, will be entitled to receive at the later of the earliest retirement age or the date of separation. This calculation must be made as of the date of separation and "shall not include contributions, years of service or compensation which may accrue after the date of separation." N.C.G.S. § 50-20(b)(3). The calculation will however, include "gains and losses on the prorated portion of the benefit vested at the date of separation." *Id*. Second, the trial court must determine the employee-spouse's life expectancy as of the date of separation and use this figure to ascertain the probable number of months the employee-spouse will receive benefits under the plan. Third, the trial court, using an acceptable discount rate, must determine the then-present value of the pension as of the later of the date of separation or the earliest retirement date. Fourth, the trial court must discount the then-present value to the value as of the date of separation. In other words, determine the value as of the date of separation of the sum to be paid at the later of the date of separation or the earliest retirement date. This calculation requires mortality and interest discounting. *See Troyan* § 45.23. The mortality and interest tables of the Pension Benefit Guaranty Corporation, a corporation within the United States Department of Labor, are well suited for this purpose. *Id*. Finally, the trial court must reduce the present value to account for contingencies such as involuntary or voluntary employee-spouse termination and insolvency of the pension plan. This calculation cannot be made with reference to any table or chart and rests within the sound discretion of the trial court.

### Distribution

In the absence of an agreement of the parties, there are two methods for dividing retirement benefits: (1) award the pension to the employee-spouse and award other marital property of offsetting value to the other spouse, N.C. Gen. Stat. § 50-20(b)(3)d, or (2) divide the pension benefits if and when paid, N.C. Gen. Stat. § 50-20(b)(3)c. The first method is known as the present value method, *Seifert*, 319 N.C. at 371, 354 S.E.2d at 508; *Workman v. Workman*,

106 N.C. App. 562, 568, 418 S.E.2d 269, 273 (1992), or the immediate offset method, *Troyan* § 45.21[1], while the second method is known as the fixed percentage method, *Seifert*, 319 N.C. at 370, 354 S.E.2d at 509, or the deferred distribution method, *Troyan* § 45.21[2]. "[W]here the value of the total marital estate is sufficient to permit it," the trial court has the discretion to choose between the present value method and the fixed percentage method. *Seifert*, 319 N.C. at 370, 354 S.E.2d at 509. In both instances, the trial court is required to value the pension and retirement benefits as of the date of separation. *Id.* at 371, 354 S.E.2d at 509; *but see Golden* § 7.13, at 311 (Supp. 1993) ("majority holds that pension need not be valued" if court uses deferred distribution method).

[2]   In reviewing the order of the trial court with respect to the DuPont defined benefit pension, we determine the trial court correctly assumed that the defendant ceased working for DuPont on the date of separation. As we have stated, the valuation must be made as of the date of separation and cannot include "compensation" accruing after that date. *Workman*, 106 N.C. App. at 570-71, 418 S.E.2d at 273-74. Thus it would have been error for the trial court to have valued the pension, as plaintiff suggests, "assuming continuous employment" beyond the date of separation. We do note that the order does not reflect that the trial court considered, as it must, any projected "gains and losses" on the portion of the pension which was vested as of the date of the separation. Our review of the record, however, does not reflect that any evidence was presented on this issue and this cannot therefore support reversal. *See Miller v. Miller*, 97 N.C. App. 77, 80, 387 S.E.2d 181, 184 (1990) (requirement that trial court value property "necessarily exist[s] only when evidence is presented").

The plaintiff further contends that the trial court erred "in not determining that the value [of the pension] on the date of separation . . . was in fact, $47,455.00." The plaintiff argues that the method used by the trial court "operated as a double reduction of the benefits allocable to the [plaintiff]." We disagree. The trial court, having determined the value of the pension at defendant's age sixty-five, was then, as we have stated, required to reduce that amount to a value as of the date of separation.

The trial court did, however, commit error when it valued the pension on the basis that defendant would not begin drawing his pension until age sixty-five. As we have stated, the calculation

must be based on the pension payments the employee will be entitled to receive at the later of the earliest retirement age or the date of separation. In this case the record indicates that defendant could have retired at age fifty and because defendant was only forty-eight on the date of separation, the computations of the value of the pension must be made based on the earliest retirement date.

## II

[3] The plaintiff contends that the trial court erred in classifying defendant's military retirement as defendant's separate property. Specifically, plaintiff argues that "military retirement pay based on service-related disability . . . should be treated as any other military retirement pay and thus be subject to division as marital property." We disagree.

As a general proposition, disability benefits may be classified as either marital or separate depending on whether they compensate the recipient for personal suffering and lost wages after the date of separation or lost wages or earning capacity before the date of separation. *Golden* § 6.11, at 201 (Supp. 1993). Thus, like personal injury and worker's compensation awards, they may have both separate and marital property components. *See Lilly v. Lilly*, 107 N.C. App. 484, 486-87, 420 S.E.2d 492, 493 (1992); *Freeman v. Freeman*, 107 N.C. App. 644, 654, 421 S.E.2d 623, 628 (1992). That portion of the benefit compensating for personal suffering and lost wages after the date of separation would be separate property and that portion compensating for the lost wages and earning capacity before the date of separation would be marital property.

The rules governing the distribution of federal military disability benefits are, however, different. The federal Uniformed Services Former Spouses' Protection Act does permit a state court to treat "disposable retired or retainer pay" of a military retiree as marital property. 10 U.S.C.A. § 1408(c)(1) (Supp. 1993); *Mansell v. Mansell*, 490 U.S. 581, 588, 104 L. Ed. 2d 675, 685 (1989); *Armstrong v. Armstrong*, 322 N.C. 396, 401, 368 S.E.2d 595, 597-98 (1988). However, because military disability payments are not included within the definition of "disposable retired or retainer pay," such disability payments cannot be classified as marital property subject to distribution under state equitable distribution laws. 10 U.S.C.A. § 1408(a)(4) (Supp. 1993); *Mansell*, 490 U.S. at 594-95, 104 L. Ed. 2d at 689

(federal law continues to preempt state law with regard to all military payments except "disposable retired or retainer pay"); N.C.G.S. § 50-20(b)(1) ("military pensions" are marital property to the extent "eligible under the Uniformed Services Former Spouses' Protection Act"). Instead, the disability payments must be classified as the retiree's separate property and, as such, treated as a distributional factor. N.C.G.S. § 50-20(c)(1); *see Clauson v. Clauson*, 831 P.2d 1257, 1263 (Alaska 1992).

In this case, all of the evidence before the trial court was that defendant's military income was based on a "[s]ervice related disability retirement." This evidence supports the trial court's finding that the military payments were for a military service related disability. This finding supports the conclusion that the military income was not marital property.

Because of the error in the valuation of the DuPont pension, the order of distribution must be reversed and this case remanded to the trial court for a new valuation of the DuPont pension consistent with the method of valuation approved in this opinion and a new distributional order. New evidence may be admitted in support of the DuPont pension valuation.

Reversed in part, affirmed in part, and remanded.

Judges COZORT and ORR concur.