BARLOW v. BARLOW

[116 N.C. App. 257 (1994)]

CHERYL ANN BARLOW, Plaintiff v. JAMES DAVID BARLOW, Defendant

No. 938DC712

(Filed 6 September 1994)

**Divorce and Separation § 168 (NCI4th)— equitable distribution—pension benefits—calculation—service after separation**

The trial court did not err in an equitable distribution action in its calculation of plaintiff's share of defendant's pension benefits. Although defendant contended that the calculation was erroneous because the formula would permit plaintiff to benefit from contributions made by defendant after the date of separation, defendant's contention is essentially identical to that presented and rejected in *Workman v. Workman*, 106 N.C. App. 562.

**Am Jur 2d, Divorce and Separation §§ 905 et seq.**

**Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.**

**Divorce: equitable distribution doctrine. 41 ALR4th 481.**

Judge GREENE concurring.

Appeal by defendant from judgment entered 13 January 1993 in Lenoir County District Court by Judge J. Patrick Exum. Heard in the Court of Appeals 11 March 1994.

*William W. Gerrans, P.A., by William W. Gerrans, for plaintiff-appellee.*

*Perry, Perry, Perry & Grigg, by David L. Grigg, Jr., for defendant-appellant.*

JOHN, Judge.

Plaintiff and defendant were married 12 June 1966 and separated 5 August 1991. A year and one day following the separation, plaintiff instituted this action seeking an absolute divorce and equitable distribution of marital property. Judgments were entered 7 January 1993 and 13 January 1993 on the divorce and equitable distribution claims respectively. Defendant appeals the latter.

By assignments of error numbers 3, 5, 6, and 7, defendant argues plaintiff's share of his pension benefits was erroneously calculated because the trial court's formula would permit plaintiff to benefit from contributions made by defendant after the date of separation. We disagree.

The details of defendant's pension plan (the Plan) with his employer, the Du Pont Company, are uncontroverted. The Plan is a "defined benefit plan" because benefits are determined "without reference to contributions and [are] based on factors such as years of service and compensation received." *Seifert v. Seifert*, 82 N.C. App. 329, 333, 346 S.E.2d 504, 506 (1986) (citation omitted), *aff'd*, 319 N.C. 367, 354 S.E.2d 506, *reh'g denied*, 319 N.C. 678, 356 S.E.2d 790 (1987); *see also Bishop v. Bishop*, 113 N.C. App. 725, 440 S.E.2d 591 (1994). Indeed the Plan is entirely non-contributory on the part of the employee, and no identifiable contributions by Du Pont are made on behalf of a participant or allocated to or set aside for any specific individual. Benefits are payable only in the form of a life annuity. An employee must be at least fifty-eight (58) years old and have accumulated twenty-seven (27) years of service to receive full benefits. With fifteen (15) years of service, an employee may elect to receive a reduced pension upon reaching age fifty (50). Defendant, forty-five (45) years old as of the parties' separation, would be eligible to receive full pension benefits of an estimated two thousand, one hundred and fifty-four dollars ($2,154.00) per month beginning 14 September 2003, or, alternatively, eight hundred sixty-six dollars ($866.00) per month as a reduced pension commencing 14 September 1995.

The trial court made the following findings of fact concerning the Plan in its equitable distribution judgment:

> 68. That the defendant had certain pension benefits as a result of his employment at Du Pont. That the defendant's employment with Du Pont began on October 1, 1968, and the parties were married on June 12, 1966 and separated on August 5, 1991. Therefore, during the marriage, the defendant was employed at the Du Pont Company for a total of 274 months. Therefore, all of the defendant's pension benefits as of the date of separation were marital property.
>
>      . . . .
>
> 74. That the parties, through the assistance of an expert witness, Jeff Hale, C.P.A., arrived at a value based on the present value of the defendant's pension benefits with the Du Pont Com-

BARLOW v. BARLOW

[116 N.C. App. 257 (1994)]

pany of $56,522.00 as of the date of separation. Mr. Hale's calculations were admitted into evidence and the Court incorporates said exhibit as a part of this Order in its entirety. That because of the substantial disparity between the value of the pension benefits and the other assets of the parties, the Court finds that it should award a percentage of the defendant's pension benefits attributed to the marriage to the plaintiff. Further, the Court finds that it would be equitable in this case to award fifty-five percent (55%) of the portion of the defendant's pension benefits that were accumulated during the marriage to the plaintiff as provided for in N.C.G.S. 50-20(b)(3)(c). The Court finds that the plaintiff is entitled to the following share of the defendant's Du Pont pension benefits: the defendant's monthly accrued pension benefits as determined upon the earliest of (1) his retirement, (2) his death, (3) his separation of service, or (4) as of such date the alternate payee is eligible and elects to receive her share of the pension benefits multiplied by the product of 274 months (total months of service during marriage) divided by the defendant's total months of service at Du Pont as of the earliest of (1) his retirement, (2) his death, (3) his separation of service, or (4) as of such date the alternate payee is eligible and elects to receive her share of the pension benefits multiplied by fifty-five percent (55%) to determine the plaintiff's portion which would be paid on a monthly basis to the plaintiff at such time as the earliest of (1) his retirement, (2) his death, (3) his separation of service, or (4) as of such date the alternate payee is eligible and elects to receive her share of the pension benefits. That is, plaintiff's share of the defendant's pension benefits shall be calculated according to the following formula:

Participant's
monthly accrued benefit      X

> Number of months participant and the alternate payee were married while the participant was in the Plan (274 months)
> Number of months participant worked for Du Pont as of the earliest of (1) his retirement, (2) his death, (3) his separation of service, or (4) as of such date the alternate payee is eligible and elects to begin receiving her share of the pension benefits

X 55%

However, in no event shall the plaintiff actually receive more than fifty percent (50%) of the pension/retirement benefits the defendant is entitled to receive.

The foregoing formula reflects application by the trial court of the "fixed percentage" method of evaluating and distributing pension benefits. According to our Supreme Court, under the fixed percentage method, after valuation of the marital estate:

the nonemployee spouse is awarded a percentage of each pension check based on the total portion of benefits attributable to the marriage. The portion of benefits attributable to the marriage is calculated by multiplying the net pension benefits by a fraction, the numerator of which is the period of the employee spouse's participation in the plan during the marriage . . . and the denominator of which is the total period of participation in the plan.

*Seifert*, 319 N.C. 367, 370, 354 S.E.2d 506, 509 (1987) (citation omitted). Under this method:

deferral of payment is possible without unfairly reducing the value of the award. The present value of the pension or retirement benefits is not considered in determining the percentage to which the nonemployee spouse is entitled. Moreover, because the nonemployee spouse receives a percentage of the benefits actually paid to the employee spouse, the nonemployee spouse shares in any growth in the benefits. . . . Yet, the formula gives the non-employee spouse a percentage only of those benefits attributable to the period of the marriage, and that spouse does not share in benefits based on contributions made after the date of separation.

*Id.* at 370-71, 354 S.E.2d at 509 (citations omitted).

In the case *sub judice*, we note initially that defendant assigns no error to the trial court's valuation of his pension benefits. We therefore do not consider whether the methodology utilized by the court in that regard comports with the formulation recently adopted by this Court in *Bishop. Bishop*, 113 N.C. App. at 731, 440 S.E.2d at 595-96. Further, defendant does not argue the trial court improperly calculated the coverture fraction as framed by the *Seifert* Court in the above-cited passage. He concedes the court properly determined the portion of defendant's pension benefits acquired during his marriage to plaintiff. However, defendant maintains that, by applying the coverture fraction to his monthly accrued pension benefits deter-

mined at the earliest of (1) his retirement, (2) his death, (3) his separation of service, or (4) as of such date the alternate payee is eligible and elects to receive her share of the pension, the court thereby included in plaintiff's award "contributions, years of service or compensation [accruing] after the date of separation" in contravention of N.C. Gen. Stat. § 50-20(b)(3) (1987 & Cum. Supp. 1993).

Defendant's contention is essentially identical to that presented and rejected in *Workman v. Workman*, 106 N.C. App. 562, 418 S.E.2d 269 (1992), a case involving equitable distribution of IBM pension benefits. In *Workman*, we found no error in the trial court's application of the coverture fraction to "the total retirement benefit to be received by the plaintiff from the IBM Retirement Plan." *Id.* at 564, 418 S.E.2d at 270-71. This Court held such a calculation did *not* include "contributions, years of service or compensation which may accrue after the date of separation." *Id.* at 570-71, 418 S.E.2d at 274 (quoting G.S. § 50-20(b)(3)). While defendant has attempted to distinguish the instant case, we conclude such distinctions as may be present are unavailing and that our decision in *Workman* is controlling. *See In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 383-84, 379 S.E.2d 30, 36-37 (1989).

We have examined defendant's remaining assignments of error and determine them to be unfounded.

Affirmed.

Judge JOHNSON concurs.

Judge GREENE concurs with separate opinion.

Judge GREENE concurring

The issue, generally stated, is whether the formula utilized by the trial court to fix the marital property share of the employee spouse's (defendant) pension is consistent with N.C. Gen. Stat. § 50-20(b). The defendant argues that the formula utilized by the trial court, which classifies as marital a fixed percentage of his retirement benefits which in this case is to be based on his total years of service (a substantial number of which will occur after the date of separation) and his highest salary (which will likely occur after the date of separation and is determined on merit), violates N.C. Gen. Stat. § 50-20(b). I agree.

It is a basic teaching that only that portion of a vested pension " 'acquired by either spouse . . '. during the course of the marriage and before the date of the separation' is marital property." *Bishop v. Bishop*, 113 N.C. App. 725, 729, 440 S.E.2d 591, 595 (1994). Thus, any retirement benefits acquired or earned after the date of separation are not properly classified as marital property. *See* Lawrence J. Golden, *Equitable Distribution of Property* § 6.16, at 212 (Brett R. Turner ed., Supp. 1993) [hereinafter *Golden*]; N.C.G.S. § 50-20(b)(1) (marital property includes only property acquired during marriage and before date of separation); N.C.G.S. § 50-20(b)(3) (award of retirement benefits must not include "contributions, years of service or compensation" accruing after the date of separation). Post-separation increases in retirement benefits that are passive in nature, that is, attributable to "market or other non-marital forces," *see Golden* at 212, are properly classified as marital property. N.C.G.S. § 50-20(b)(3) ("gains" are to be included in award).

The question is whether a method can be devised to distribute passive gains in a pension occurring after the date of separation and which does not distribute gains in the pension which are earned after the date of separation, when the employee spouse retires after the date of separation and a deferred distribution is selected by the trial court. Our courts have answered this question in the affirmative, *Seifert v. Seifert*, 319 N.C. 367, 370-71, 354 S.E.2d 506, 509, *reh'g denied*, 319 N.C. 678, 356 S.E.2d 790 (1987); *Workman v. Workman*, 106 N.C. App. 562, 570-71, 418 S.E.2d 269, 274 (1992), holding that application of the coverture fraction adopted by the legislature, N.C.G.S. § 50-20(b)(3), resolves the issue. This fraction consists of a numerator representing the time of employment during the marriage and a denominator representing the time between initial employment and retirement. Using the formula, the marital estate is awarded, as was done in this case, the resulting percentage of the employee spouse's retirement benefit received at the time of retirement.

Although I am bound by the previous decisions of our Court and the Supreme Court, I do not agree that application of the coverture fraction necessarily results in compliance with the legislative mandate that precludes the marital classification of post-separation *earned* increases in the retirement benefits and includes post-separation *passive* increases in the marital estate. In many instances, as in this case, the formula can result in the marital classification of a portion of the retirement benefits earned by the employee spouse after the date of separation. Some states, in an effort to prevent this

problem, have devised formulas utilizing a denominator representing the time of employment through the date of separation and then multiplying the fraction "by the value of the employee's retirement benefits if he stopped working on the *date of classification*." *Golden* at 315. This method solves the problem created by the North Carolina formula but creates a new problem in that the marital estate receives nothing for the passive increases in the benefits occurring after the date of separation. As recently noted by one author, in "pre-retirement cases," all of the various formulas devised to implement the deferred distribution of retirement benefits are "flawed" in that they fail to fairly allocate retirement benefits into marital and non-marital portions. *Golden* at 317. In any event, North Carolina has adopted a formula which has been approved by our courts as fairly allocating the marital and nonmarital retirement benefits, and I am bound by these decisions.

Thus, although I agree with the defendant that the formula utilized by the trial court classifies as marital a portion of the retirement benefits earned after the date of separation and consequently violates the mandate of Section 50-20(b)(3), I am nonetheless compelled to join with the majority in affirming the judgment of the trial court. Furthermore, it may be that the complexity involved in fairly distributing a defined benefit pension requires the use of some formula, though it may be flawed. If so, it appears that we should acknowledge the deficiencies in the formula and make some effort to make appropriate adjustments. That could be done by treating the problem as a distributional factor under Section 50-20(c)(12), thus granting the trial court broad discretion to equitably adjust the parties' share of the marital estate. This argument has not been made in this case and therefore is not a basis for reversal.