BRENDA WILKINS CUNNINGHAM, Plaintiff v.
JON CRAIG CUNNINGHAM, Defendant

No. COA04-280

(Filed 19 July 2005)

## 1. Divorce— equitable distribution—military pension—defined benefit plan not valued—remanded

An equitable distribution order was remanded where the court failed to determine that defendant's military pension was a defined benefit retirement plan and failed to value it.

CUNNINGHAM v. CUNNINGHAM

[171 N.C. App. 550 (2005)]

**2. Divorce— equitable distribution—military pension— reduction for disability payments**

An equitable distribution action was remanded for revision to avoid foreclosing defendant's right to forego military pension payments in favor of disability payments, which are not classified as marital property.

**3. Child Support, Custody, and Visitation— custody—findings—misconduct**

The trial court did not err in a child custody action by not making findings concerning plaintiff's alleged deception in not joining defendant with the children during a military deployment to Okinawa. The court's order reflects consideration of the parties' ability to cooperate for the benefit of the children, their badly flawed behavior toward each other, and the possible effect on the children. The court chose to find that neither party was fully victim or villain.

**4. Child Support, Custody, and Visitation— restrictions on children's contact with parent's friend—sufficient**

In a child custody action, the restrictions placed on the children's contact with a friend of the mother were sufficient. Those prohibitions were not exclusive; defendant may bring to the court any circumstances which constitute the mother permitting interference by the friend with the father's relationship with the children.

**5. Child Support, Custody, and Visitation— custody—best interests of children—living in North Carolina**

There was competent evidence in a child custody case that the best interests of the children did not require that plaintiff and the children live in North Carolina after 1 July 2005, when defendant intended to retire from the Marine Corps. Defendant testified he intended to live near the children wherever plaintiff and the children resided.

**6. Appeal and Error— Court of Appeals—judicial notice**

The Court of Appeals did not take judicial notice of school calendars (and thus the nights the children would be with defendant) in an appeal from a child support order where the calendar for one year could have been submitted to the trial court, and the calendar for another should have been the subject of a motion in the cause in the trial court to modify the support order.

CUNNINGHAM v. CUNNINGHAM

[171 N.C. App. 550 (2005)]

**7. Divorce— alimony—misconduct—findings**

The trial court fully addressed the issue of plaintiff's misconduct relating to alimony where the court recited misconduct by plaintiff and defendant, and court found that the marriage was dysfunctional, that both parties were at fault, and that plaintiff should be given credit for career sacrifices that helped defendant succeed.

**8. Divorce— alimony—reasons for duration—findings**

An alimony order was remanded where the court made insufficient findings about the reasons for the duration of the alimony payments.

**9. Divorce— alimony—living expenses**

The trial court did not abuse its discretion in an alimony award by reducing the amount allowed for defendant's living expenses.

**10. Divorce— alimony—income—bonuses**

There was no prejudice from any error in a finding in an alimony award that defendant's income would be supplemented by bonuses. Defendant would have sufficient funds for his monthly expenses and obligations under the order even without the bonuses.

**11. Divorce; Child Support, Custody, and Visitation— attorney fees—apportionment between issues**

The court had sufficient evidence upon which to base its apportionment of attorney fees between equitable distribution, child custody and support, and alimony.

**12. Costs— attorney fees—divorce—ability to pay**

A finding that defendant had the ability to pay the last portion of plaintiff's attorney fees in a lump sum was remanded where the equitable distribution award was also remanded. A change in the assets awarded to plaintiff through equitable distribution might impact his ability to make such a lump sum payment.

Appeal by defendant from judgments entered 11 July 2003 by Judge Karen Alexander in Craven County District Court. Heard in the Court of Appeals 10 January 2005.

*Charles William Kafer, for plaintiff-appellee.*

*Wyrick, Robbins, Yates & Ponton, LLP, by K. Edward Greene and Donald L. Beci, for defendant-appellant.*

CALABRIA, Judge.

Jon Craig Cunningham ("defendant") appeals orders entered on 11 July 2003 concerning (1) equitable distribution (the "ED order"); (2) defendant's military retirement benefits (the "military pension order"); and (3) custody, child support, alimony, and attorney fees. We affirm in part, reverse in part, and remand.

Defendant and Brenda Wilkins Cunningham ("plaintiff") were married 19 May 1990, separated 20 June 2000, and divorced 13 November 2001. Two children were born of the marriage, the first child on 9 July 1992 and the second child on 21 March 1995 (the "children"). In August 1997, the parties moved to Havelock, North Carolina after defendant, a Lieutenant Colonel and aviator in the United States Marine Corps, was transferred to Cherry Point Marine Corps Air Station ("Cherry Point"). In early 2000, the parties jointly decided that defendant would accept a three-year overseas tour of duty in Okinawa beginning 20 June 2000 and that plaintiff and the children would accompany him. Prior to defendant's departure, plaintiff changed the plan and told him that she and the children would not accompany him initially but would join him later. After defendant arrived in Okinawa, plaintiff informed defendant that neither she nor the children would be joining him and that she wanted a separation and divorce.

The parties never resumed marital relations after 20 June 2000. On 19 September 2000, plaintiff filed a complaint for divorce from bed and board, postseparation support, alimony, child custody, child support, and attorney fees. Defendant filed an answer and counterclaimed, seeking, *inter alia*, equitable distribution, child support and custody of the minor children. Defendant subsequently shortened his tour of duty in Okinawa to one year and returned to North Carolina to be near the children.

The Honorable Karen Alexander presided over the fifteen-day trial in Craven County District Court, which started on 5 March 2002 and concluded on 27 November 2002. The court found defendant's taxable monthly wages for 2002, as a Lieutenant Colonel continuously on active duty since 13 March 1981, were $6,919.80. His non-taxable monthly allowances were $1,130.47. Therefore, his gross monthly

income totaled $8,040.27, and his monthly income after taxes and withholding was $6,250.49. In 2002, defendant's income was supplemented with yearly bonuses of up to $9,000.00. Defendant accrued military retirement benefits ("military pension") from 11 August 1983 and became eligible to receive his military pension on 11 August 2003. Plaintiff offered evidence at trial that, based on his pay scale as of 1 July 2000, defendant would receive a monthly military pension of $3,126.00 and, based on his life expectancy, would receive a total pension in the amount of $561,494.62. Plaintiff is a registered nurse and did not work outside the home after the birth of the parties' second child until after the parties' separation when she commenced employment as a school nurse. During the 2002-2003 academic year, plaintiff earned $1,169.64 per month.

In the ED order, the trial court concluded, "[t]he large disparity in [the] income between the parties and the substantial difference between the military retirement distribution warrants an unequal distribution of the marital property and debts." The trial court did not value defendant's retirement plan, but found the following:

Were the defendant to retire on 11 August 2003, his earliest possible retirement date, . . . . [p]laintiff's share under the terms of this order would be 25.22 percent. Therefore, the defendant will receive 74.88 percent or a substantially greater portion of this retirement. The longer he stays in the Marine Corps after 11 August 2003, the greater will be his share of this retirement.

The trial court further ordered that plaintiff "receive one-half of the marital portion of the defendant's military retirement" as set out in the military pension order.

The military pension order required defendant to pay plaintiff one-half of the marital portion of each monthly military pension payment beginning the first date defendant receives his first pension check. The marital portion of the military pension would be determined by a coverture fraction, the numerator being 121.03, the number of months the parties were married, and the denominator being defendant's total number of months of service for pension purposes. The trial court further ordered that "the defendant shall not take any steps designed to diminish or in any way reduce the amount of disposable retired or retainer pay that he is entitled to receive by virtue of his military service to the end that the plaintiff's portion of his retirement is reduced."

In the order for custody, child support, alimony, and attorney fees, the trial court granted the parties joint custody of the children. The trial court granted primary custody to plaintiff and secondary custody and visitation to defendant. Plaintiff's primary custody was conditioned on her and the children's continued residence in North Carolina unless defendant was transferred to another duty station outside North Carolina or ceased to reside in North Carolina; however, plaintiff was not required to reside in North Carolina after 1 July 2005. The trial court further ordered that plaintiff's friend, Kim Tippett, with whom defendant had a poor relationship, "shall not be utilized as a babysitter for the children under any circumstances and the children shall not spend the night with Kim Tippett for any reason." Defendant was ordered to pay plaintiff: (1) $1,160.57 per month in child support beginning 1 January 2003; (2) $1,000.00 per month in alimony beginning 1 January 2003 and ending 1 December 2005; and (3) $35,000.00 in attorney fees paid at the rate of $500.00 per month from 1 January 2003 through 1 December 2005 with the $17,000.00 balance payable on or before 31 December 2005. From these orders, defendant appeals.

## I. Equitable Distribution

**[1]** Defendant asserts the trial court failed to value his military pension in the ED order. "Upon application of a party, the court shall determine what is the marital property and divisible property and shall provide for an equitable distribution of the marital property and divisible property between the parties . . . ." N.C. Gen. Stat. § 50-20(a) (2003). The division of property in an equitable distribution "is a matter within the sound discretion of the trial court." *Gagnon v. Gagnon*, 149 N.C. App. 194, 197, 560 S.E.2d 229, 231 (2002). The trial court's division will only be reversed upon a showing that it "could not have been the result of a reasoned decision." *Lawing v. Lawing*, 81 N.C. App. 159, 162, 344 S.E.2d 100, 104 (1986).

Under N.C. Gen. Stat. § 50-20(c) (2003), equitable distribution is a three-step process; the trial court must (1) "determine what is marital [and divisible] property"; (2) "find the net value of the property"; and (3) "make an equitable distribution of that property." *Soares v. Soares*, 86 N.C. App. 369, 371, 357 S.E.2d 418, 419 (1987) (reversing and remanding where the trial court "made some findings and conclusions regarding marital property, but it did not place a value on the marital home"). "Marital property includes all vested and nonvested pension, retirement, and other deferred compensation rights, and vested and nonvested military pensions eligible under the federal

Uniformed Services Former Spouses' Protection Act." N.C. Gen. Stat. § 50-20(b)(1) (2003). A trial court must value all marital and divisible property—collectively termed distributable property—in order to reasonably determine whether the distribution ordered is equitable. *Turner v. Turner*, 64 N.C. App. 342, 346, 307 S.E.2d 407, 409 (1983). Therefore, when no finding is made regarding the value of an item of distributable property, a trial court's findings are insufficient even if a determination is made with respect to the percentage of a distributable property's value to which each party is entitled. *Byrd v. Owens*, 86 N.C. App. 418, 421-22, 358 S.E.2d 102, 105 (1987) (holding the trial court erred by failing to assign a promissory note value using traditional methods of tracing funds and "simply distribut[ing] it by giving an 80% interest to defendant and 20% to plaintiff").

Pursuant to N.C. Gen. Stat. § 50-20.1(b) (2003),

The award of nonvested pension, retirement, or other deferred compensation benefits may be made payable:

(1) As a lump sum by agreement;

(2) Over a period of time in fixed amounts by agreement; or

(3) By appropriate domestic relations order as a prorated portion of the benefits made to the designated recipient at the time the party against whom the award is made actually begins to receive the benefits.

Regardless of the method of payment under N.C. Gen. Stat. § 50-20.1(b), the amount of the award shall be determined by applying a coverture fraction—"the proportion of time the marriage existed (up to the date of separation of the parties), simultaneously with the employment which earned the vested and nonvested pension, retirement, or deferred compensation benefit, to the total amount of time of employment"—to the value of "the vested and nonvested accrued benefit . . . ." N.C. Gen. Stat. § 50-20.1(d) (2003).

A defined benefit retirement plan, as opposed to a defined contribution retirement plan, "is determined without reference to contributions and is based on factors such as years of service and compensation received." *Seifert v. Seifert*, 82 N.C. App. 329, 333, 346 S.E.2d 504, 506 (1986). For the purpose of equitable distribution, a defined benefit plan is valued as follows:

First, the trial court must calculate the amount of monthly pension payment the employee, assuming he retired on the date of

separation, will be entitled to receive at the later of the earliest retirement age or the date of separation. This calculation must be made as of the date of separation and "shall not include contributions, years of service or compensation which may accrue after the date of separation." [N.C. Gen. Stat. § 50-20.1(d)]. . . . Second, the trial court[,] [using an acceptable mortality table] must determine the employee-spouse's life expectancy as of the date of separation and use this figure to ascertain the probable number of months the employee-spouse will receive benefits under the plan. Third, the trial court, using an acceptable discount rate, must determine the then-present value of the pension as of the later of the date of separation or the earliest retirement date. Fourth, the trial court must discount the then-present value to the value as of the date of separation. In other words, determine the value as of the date of separation of the sum to be paid at the later of the date of separation or the earliest retirement date. . . . Finally, the trial court must reduce the present value to account for contingencies such as involuntary or voluntary employee-spouse termination and insolvency of the pension plan. This calculation cannot be made with reference to any table or chart and rests within the sound discretion of the trial court.

*Bishop v. Bishop,* 113 N.C. App. 725, 731, 440 S.E.2d 591, 595-96 (1994).

In the instant case, defendant's military pension is categorized as a defined benefit retirement plan. 10 U.S.C. § 6323 (2005) (providing retirement benefit eligibility to Marine officers who have served twenty years); *Seifert,* 82 N.C. App. at 333, 346 S.E.2d at 506 (stating "[t]he military retirement system is noncontributory . . ."). The trial court properly determined that the coverture fraction would entitle plaintiff to 25.22 percent of defendant's military pension if defendant retired at his earliest retirement date, 11 July 2003. In addition, the trial court properly attempted, pursuant to N.C. Gen. Stat. § 50-20.1(b)(3), to award plaintiff a prorated portion of defendant's military pension, one-half of the marital portion of each of defendant's pension payments, to be paid by defendant at the time he began receiving benefits. However, the trial court failed to determine that defendant's military pension was a defined benefit retirement plan and failed to value it. We further note the record contained evidence regarding the value of defendant's military pension as of the date of separation. *Cf. Albritton v. Albritton,* 109 N.C. App. 36, 426 S.E.2d 80 (1993) (holding the trial court's error in not valuing a

retirement account was not prejudicial because plaintiff failed to provide evidence regarding the date of separation value). Accordingly, we reverse and remand the trial court's ED order and military pension order for a new equitable distribution order including valuation of defendant's military pension using the method established in *Bishop*.

[2] Defendant also asserts the trial court erred in the ED order by ordering that defendant "shall not take any steps designed to diminish or in any way reduce the amount of disposable retired or retainer pay that he is entitled to receive by virtue of his military service to the end that the plaintiff's portion of his retirement is reduced." Specifically, defendant argues the order forecloses his right to forego military pension payments in favor of disability payments if he becomes so eligible. It is well established that "disability payments cannot be classified as marital property subject to distribution under state equitable distribution laws." *Bishop*, 113 N.C. App. at 733, 440 S.E.2d at 597. In *Halstead v. Halstead*, 164 N.C. App. 543, 550, 596 S.E.2d 353, 358 (2004), this Court held that the trial court's "order requiring [the defendant] to pay his former wife any amount withheld from her share of [the defendant's] military retirement due to future reductions caused by an act or omission, including future waivers of retirement pay, contravenes [federal law]" by distributing disability payments. In the instant case, the trial court's order could encompass reductions in defendant's military pension payments due to his electing to receive disability payments if he becomes eligible. Accordingly, upon remand, the trial court must revise the ED order so as to avoid foreclosing defendant's right to forego pension payments in favor of disability payments if he becomes so eligible.

II. Child Custody

[3] In child custody determinations, the welfare of the child is paramount, and "the court must consider all of the facts of the case and decide the issue [of custody] in accordance with the best interests of the child." *Dean v. Dean*, 32 N.C. App. 482, 484-85, 232 S.E.2d 470, 472 (1977). Moreover, the trial court must resolve all issues raised by relevant evidence that directly concern the fitness of a party to have care, custody, and control of a child, *In re Kowalzek*, 37 N.C. App. 364, 370, 246 S.E.2d 45, 48 (1978), or that directly concern the child's best interests. *Lamond v. Mahoney*, 159 N.C. App. 400, 407, 583 S.E.2d 656, 661 (2003). While a trial court's decisions in child custody matters will not be overturned absent a clear abuse of discretion, *see*

*Surles v. Surles,* 113 N.C. App. 32, 36-37, 437 S.E.2d 661, 663 (1993), a custody order is, nonetheless, "deemed fatally defective when it fails to treat an important question raised by the evidence." *Dixon v. Dixon,* 67 N.C. App. 73, 77, 312 S.E.2d 669, 672 (1984).

Defendant asserts the trial court erred by failing to make findings regarding whether plaintiff, in order to deprive defendant of contact with the children, willfully misled defendant during their discussions concerning her intention to later join defendant with the children in Okinawa. Evidence of a parent's ability or inability to cooperate with the other parent to promote their child's welfare is relevant in a custody determination and material to determining the best interests of the child. *Cf. Phelps v. Phelps,* 337 N.C. 344, 446 S.E.2d 17 (1994) (quoting as relevant to a custody determination a finding of fact regarding one parent's inability to cooperate in a reasonable fashion with the other parent to promote their child's best interests); *Woncik v. Woncik,* 82 N.C. App. 244, 249, 346 S.E.2d 277, 280 (1986) (holding "interference with visitation of the noncustodial parent . . . [that negatively] impact[s] . . . the welfare of the child can constitute a substantial change of circumstances sufficient to warrant a change of custody").

The trial court's order reflects that it fully considered and made findings to address each parent's ability to cooperate for the benefit of the children and both parents' marital misconduct. As defendant acknowledges, the trial court did not ignore his evidence regarding Okinawa, but rather found:

59. The defendant was to have permanent change of duty station orders in June, 2000. Discussion was had between the parties as to the location for these orders and a joint decision was made that the defendant would take an accompanied three-year overseas tour in Okinawa beginning in June, 2000. However, the parties had arguments and the turmoil between the parties continued to exist. After the defendant received orders and the transfer was to happen, the plaintiff advised him that she was not going to go with him initially. This was not expected by the defendant. He testified that he felt "set up". Evidence was presented that the plaintiff went to divorce and separation classes on base with her friend, Kim Tippett, as a disguise prior to the defendant's overseas tour. She stated that she would consider going with him at a later time. Subsequently, she advised him that she was not coming to Okinawa.

This finding of fact fully describes the circumstances surrounding defendant's tour in Okinawa and, indeed, directly parallels the facts identified in defendant's brief on appeal. Defendant's objection appears to be solely that the trial court did not brand this conduct as deceitful and conclude that it so adversely affected plaintiff's ability to be a good parent that defendant should be given primary custody.

It is apparent from the trial court's order that the trial court did not disregard or fail to resolve the issue of plaintiff's ability to cooperate with defendant regarding the children, but rather concluded that *both parents* were badly flawed in this area. The court specifically found:

84. The parties have been excellent parents for the two minor children, but the parties have been poor spouses to each other. The way the parties treat each other is a concern. . . .

85. . . . The problems these parties have with each other maybe [sic] affecting the children on a psychological standpoint since evidence exists of episodes of anxiety and repeated incidences where the younger child soils his pants by having bowel movements.

86. . . . Both parties are well grounded and are the best . . . parent anyone could have but for the behavior exhibited by each party around the other. . . . Each party has acted poorly with the other and each has faults with respect to how each has treated the other.

In short, the trial court specifically addressed the ability of the parents to cooperate with each other and found that both parents were severely lacking. *See In re Stancil*, 10 N.C. App. 545, 549, 179 S.E.2d 844, 847 (1971) (noting that the "trial judge is not required to find all the facts shown by the evidence. . . . It is sufficient if enough material facts are found to support the judgment"). The trial court chose to find that neither party was fully the villain or the victim.

[4] Defendant further asserts the trial court erred by placing insufficient restrictions on the children's contact with Kim Tippett. The trial court's findings of fact are conclusive on appeal if supported by competent evidence. *Raynor v. Odom*, 124 N.C. App. 724, 729, 478 S.E.2d 655, 658 (1996). The trial court's conclusions of law and orders will not be reversed if supported by the findings of fact. *Witherow v. Witherow*, 99 N.C. App. 61, 63, 392 S.E.2d 627, 629 (1990). Based on competent evidence, the trial court found the following facts:

CUNNINGHAM v. CUNNINGHAM

[171 N.C. App. 550 (2005)]

Ms. Tippet does not like the defendant. She has insulted him. The defendant does not like Ms. Tippet. There was evidence that Ms. Tippet interfered with the defendant spending quality time with the children at such times he had an opportunity to do so. This type of interference shall not be allowed by the plaintiff in the future.

These findings of fact support the trial court's order that "Kim Tippet shall not be utilized as a babysitter for the children under any circumstances and the children shall not spend the night with Kim Tippet for any reason." However, as the trial court's findings and order indicate, whatever relationship Kim Tippett has with the children, it is and must continue to be subordinate to defendant's relationship with the children. The order of the trial court has given the father recourse against the mother should she fail to prevent interference by Kim Tippett in that relationship, and we do not read the trial court's prohibition against babysitting or spending the night as an exclusive list of those situations through which Kim Tippett has interfered in the father and children's relationship. The father, accordingly, may bring to the attention of the trial court, for purposes of holding the mother responsible, *any* circumstances which constitute the mother's permitting interference by Kim Tippett with the father's relationship with the children. We find this recourse, in conjunction with the listed restrictions, to be sufficient.

**[5]** Defendant additionally contends the trial court did not have competent evidence to support its finding of fact that the best interests of the children would not require plaintiff and the children to remain in North Carolina after 1 July 2005. The trial court found as fact that both parties are suitable persons to have custody of the children and that the best interests of the children would be served by the parties having joint custody, with plaintiff having primary custody. Furthermore, the trial court found the following:

The best interest and general welfare of the children will be promoted by the plaintiff staying in the State of North Carolina with the children as long as the defendant is stationed and continues to reside in the State of North Carolina. However, if he is not stationed in North Carolina or ceases to reside in North Carolina, the best interests of the children will not require that the plaintiff continue to reside here. Further, the best interests and general welfare of the children will not require that the plaintiff and the children reside in North Carolina after 1 July 2005.

At the hearing, defendant testified that he would be stationed at Cherry Point until his intended retirement in June 2005. Defendant also testified he intended to live near the children no matter where the plaintiff and the children reside. Accordingly, the trial court had competent evidence that a move by plaintiff and the children after 1 July 2005 would not compromise the children's ability to have contact with defendant and did not abuse its discretion by allowing plaintiff and the children to move from North Carolina after that date.

III. Child Support

**[6]** Defendant asserts the trial court erred under the child support guidelines by computing child support using worksheet A. Specifically, based on the calendars for the children's elementary school, defendant argues the children will live with him for at least 123 nights annually; therefore, the trial court was required under the guidelines to use worksheet B.

In support of his argument, defendant requests that this Court take judicial notice of the children's elementary school calendars for the academic years 2003-2004 and 2004-2005, which defendant obtained from a county website. We note, however, the defendant could have entered the 2003-2004 calendar into evidence because it was adopted 21 November 2002, six days before the final date of the hearing. Under N.C. R. App. P. 9 (2005), this Court's review is limited to the record on appeal and the verbatim transcript of the proceedings, and judicial notice is not a substitute for the proper compilation of evidence that could have been submitted to the trial court during the hearing and included in the record on appeal.

The 2004-2005 school calendar reflects that it was not adopted until 20 November 2003 and was therefore not in existence at the time of the hearing. Rather than requesting this Court to take judicial notice of evidence that the trial court could not have considered, defendant's proper course of action with respect to the 2004-2005 calendar—or any subsequent school calendar—would be to file a motion in the cause with the trial court to modify or vacate the child support order pursuant to N.C. Gen. Stat. § 50-13.7(a) (2003). Accordingly, we decline to take judicial notice of the 2003-2004 and 2004-2005 school calendars.

IV. Alimony

**[7]** In making an award of alimony, the trial court must consider "all relevant factors" necessary to determine that the award is equitable.

N.C. Gen. Stat. § 50-16.3A(a) (2003). "[T]he court shall make a specific finding of fact on each of the factors in [N.C. Gen. Stat. § 50-16.3A(b) (2003)] if evidence is offered on that factor." N.C. Gen. Stat. § 50-16.3A(c) (2003). Pursuant to N.C. Gen. Stat. § 50-16.3A(b)(1), the trial court must consider "the marital misconduct of either of the spouses." Marital misconduct includes the act of abandoning the other spouse. N.C. Gen. Stat. § 50-16.1A(3) (2003). "An abandonment occurs when one spouse brings the cohabitation with the other spouse to an end without justification, without the consent of the other spouse and without intent of renewing it. The spouse alleging abandonment must prove the absence of justification for the abandonment." *Corbett v. Corbett*, 67 N.C. App. 754, 755, 313 S.E.2d 888, 889 (1984) (emphasis omitted).

Defendant asserts the trial court erred by failing to make findings regarding whether plaintiff abandoned defendant by representing she would join him in Okinawa, then informing him, after he had moved, she would not join him and intended to divorce him. Defendant alleged and offered evidence that plaintiff intentionally misled him into accepting a post in Okinawa with promises to accompany him while actually intending to end their marital relationship. In its order, the trial court not only recited the events surrounding Okinawa, but also made findings regarding marital misconduct of defendant and other marital misconduct of plaintiff. Not surprisingly, the trial court then found that "[t]he marriage between the parties was dysfunctional" and that "[b]oth parties were at fault in the breakup of the marriage." The trial court then specifically found—while addressing the alimony issue—that "[d]espite the marital misconduct of the plaintiff, she should be given credit for her career sacrifices that no doubt helped the defendant succeed in his military goals." The trial court thus fully addressed the question of plaintiff's misconduct as it relates to alimony. *See Friend-Novorska v. Novorska*, 143 N.C. App. 387, 395, 545 S.E.2d 788, 794 (2001) (holding "the findings of fact required to support . . . an alimony award are sufficient if findings of fact have been made on the ultimate facts at issue in the case and the findings of fact show the trial court properly applied the law in the case").

[8] Defendant also asserts the trial court made insufficient findings regarding the duration of the alimony. "[A] trial court's failure to make any findings regarding the reasons for the amount, duration, and the manner of payment of alimony violates N.C. Gen. Stat. § 50-16.3(A)(c)." *Fitzgerald v. Fitzgerald*, 161 N.C. App. 414, 421, 588

S.E.2d 517, 522-23 (2003). While the trial court made sufficient findings regarding the reasons for the amount and manner of payment, the trial court failed to make findings concerning the reasons for the duration of the alimony payments. Accordingly, we remand the alimony order for further findings of fact concerning the duration of the alimony award.

[9] Defendant next asserts the trial court's reduction in his expenses was arbitrary, and the amount of alimony when combined with his expenses, including child support and other payments, exceeds that which he is able to pay. Since it is likely to recur upon remand, we deem it necessary to address this issue. "The determination of what constitutes the reasonable needs and expenses of a party in an alimony action is within the discretion of the trial judge, and he is not required to accept at face value the assertion of living expenses offered by the litigants themselves." *Whedon v. Whedon*, 58 N.C. App. 524, 529, 294 S.E.2d 29, 32 (1982). "Implicit in this is the idea that the trial judge may resort to his own common sense and every-day experiences in calculating the reasonable needs and expenses of the parties." *Bookholt v. Bookholt*, 136 N.C. App. 247, 250, 523 S.E.2d 729, 732 (1999).

The trial court found defendant's net income after taxes and withholding was $6,250.49 per month. The trial court's custody, child support, alimony, and attorney fees order required defendant to pay per month $1,160.57 in child support, $1,000.00 in alimony, $500.00 in attorney fees, and $88.78 in medical insurance for the children. After these deductions, defendant would have $3,501.14 per month for living expenses. Defendant submitted an affidavit stating that his monthly living expenses were $4,648.00.

The trial court found defendant could reasonably lower his monthly living expenses by almost $1,500.00, to $3,156.00, by taking the following steps: (1) reducing his $134.00 telephone bill to $100; (2) cancelling his $55.00 cable television subscription; (3) reducing his $650.00 food expense to $400.00; (4) reducing his $100.00 clothing expense to $50.00; (5) stopping his $60.00 allowance to the children since he would be paying child support; (6) reducing his $207.00 gift and special occasion expense to $104.00; (7) reducing his vacation and recreation expense from $450.00 to $100.00; and (8) reducing his $60.00 grooming and hygiene expense to $20.00. Additionally, the trial court found that defendant's $150.00 furniture payment would soon end and his $400.00 credit card payments were a duplication of other expenses.

After reviewing the record on appeal, we hold the trial court did not abuse its discretion by making the above reductions to defendant's monthly expenses. Accordingly, defendant will have sufficient funds to meet his monthly living expenses and obligations under the trial court's current order and will also have approximately $345.14 per month in unutilized funds.

**[10]** Defendant also argues the trial court's finding that his income would be supplemented by bonuses was not supported by the evidence. He states the only evidence concerning his bonuses was from him and that he would receive no more bonuses. However, as established above, even in the absence of bonuses, defendant would have sufficient funds for his monthly expenses and obligations under the current order. Therefore, to the extent the finding was in error, we can discern no prejudice to defendant.

V. Attorney Fees

**[11]** Defendant asserts the trial court erred by failing to make valid findings that the attorney fees awarded were not attributable to work performed on the equitable distribution portion of the case. Specifically, defendant argues one cannot discern the portion of the case to which each charge applies nor the nature of the service provided from the fee affidavits submitted by plaintiff's attorney; therefore, the trial court had insufficient evidence upon which to base its award of attorney fees.

Pursuant to N.C. Gen. Stat. § 50-13.6 (2003), the trial court may award attorney fees in an action for child custody and support if the party seeking the award was an interested party acting in good faith when she instituted the action and has "insufficient means to defray the expense of the suit." *Cox v. Cox*, 133 N.C. App. 221, 228, 515 S.E.2d 61, 66 (1999). Under N.C. Gen. Stat. 50-16.4 (2003), the trial court may award attorney fees in an action for alimony or postseparation support "to a party who has shown that she is entitled to the relief demanded, is a dependent spouse, and lacks sufficient means upon which to live during the prosecution of the suit and to defray her necessary legal expenses." *Perkins v. Perkins*, 85 N.C. App. 660, 668, 355 S.E.2d 848, 853 (1987). If each of the statute's requirements are met, this Court reviews the amount of attorney fees awarded under an abuse of discretion standard. *Id.*; *Atwell v. Atwell*, 74 N.C. App. 231, 238, 328 S.E.2d 47, 51 (1985).

To support the reasonableness of an award of attorney fees, the trial court must make "findings regarding the nature and scope of the

legal services rendered, the skill and time required, the attorney's hourly rate, and its reasonableness in comparison with that of other lawyers." *Cobb v. Cobb*, 79 N.C. App. 592, 595, 339 S.E.2d 825, 828 (1986); *Perkins*, 85 N.C. App. at 668, 355 S.E.2d at 853. "Moreover, attorney fees are not recoverable in an action for equitable distribution." *Holder v. Holder*, 87 N.C. App. 578, 584, 361 S.E.2d 891, 894 (1987). Therefore, in a combined action, the trial court's findings of fact must reflect that the attorney fees awarded are attributable only to the alimony or child custody and support claims. *Id.*

Pertinent to the issue of attorney fees and based on competent evidence, the trial court found plaintiff was the dependent spouse, defendant was the supporting spouse, and plaintiff was entitled to alimony. The trial court also made the following pertinent findings:

99. The plaintiff is an interested party acting in good faith who has insufficient means to defray the expenses of this action. . . . She is not entitled to receive attorneys's fees for the portions of this case relating to equitable distribution and divorce. However, the time expended by plaintiff's attorney regarding those issues has not been substantial

. . . .

104. The trial of this case took fifteen days. Although a portion of the trial related to the issue of equitable distribution, the vast majority of the trial related to the issue of custody. . . .

105. The plaintiff['s] . . . attorney has been licensed to practice since 1969[,] . . . limits his practice to family law[,] . . . is board certified in family law[,] . . . [and] charges $300.00 per hour[,] . . . which [b]ased upon . . . his experience . . . is reasonable.

. . . .

107. The trial of this case has resulted in a substantial increase in attorney's fees and time expended. The trial of this case, the preparation for trial, the staff time, [and] the attorney's time have resulted in 244.8 hours of service. That time and services have a reasonable value of $64,830.00. . . . Of this $64,830.00, at least 75% of that time and that fee have related to issues pertaining to custody, child support, and alimony. Of these fees, the defendant should pay the sum of $35,000.00.

Therefore, the trial court's findings properly (1) met the statutory requirements necessary for an award of attorney fees; (2) addressed

CUNNINGHAM v. CUNNINGHAM

[171 N.C. App. 550 (2005)]

the services, skill, time, and rate of plaintiff's counsel; and (3) apportioned the fees to exclude attorney fees for equitable distribution.

We note defendant does not argue on appeal that the trial court had insufficient evidence for its findings that plaintiff was acting in good faith and had insufficient means to defray the costs of the action. Moreover, the trial court had sufficient evidence upon which to base its apportionment of the attorney fees between equitable distribution and the other relevant issues. Although the fee affidavits did not label every charge as being attributable to a particular issue, our review of the affidavits reveals plaintiff's counsel adequately described each line item service. Therefore, the trial court could reasonably compare the time spent on each issue at trial and the evidence presented with the line item services on the fee affidavits. In this way, the trial court could rationally determine that approximately seventy-five percent of plaintiff's attorney fees, roughly $48,622.50, were attributable to issues pertaining to alimony or child custody and support. Accordingly, we can discern no abuse of discretion by the trial court in ordering defendant to pay $35,000.00 in attorney fees.

[12] Defendant also assigns error to the trial court's finding that, after paying "$500.00 per month for each month beginning 1 January 2003 through 1 December 2005[,]" defendant has the ability to pay the remaining portion of the $35,000.00 in attorney fees by making a "lump sum payment of $17,000.00 on or before 31 December 2005." Because a change in the amount of assets awarded defendant through equitable distribution might impact his ability to make such a lump sum payment, we remand the issue of defendant's ability to make a lump sum payment of $17,000.00 in attorney fees for further findings of fact in light of the new equitable distribution order required by our above holding.

VI. Conclusion

We have carefully considered defendant's remaining arguments and find them to be without merit. For the foregoing reasons, we (1) reverse and remand the trial court's ED and military pension orders for valuation of defendant's military pension and a new equitable distribution order as well as a revision of the ED order to avoid language foreclosing defendant's right to forego pension payments in favor of disability payments if he becomes eligible; (2) affirm the trial court's child custody order; (3) affirm the child support order; (4) reverse and remand the trial court's alimony order for findings explaining the reasons for the duration of the alimony award; and (5) affirm the trial

court's award of attorney fees but remand the issue of defendant's ability to pay a lump sum of $17,000.00 in light of the new equitable distribution order. "On remand, the trial court shall rely upon the existing record, but may in its sole discretion receive such further evidence and further argument from the parties as it deems necessary and appropriate to comply with the instant opinion." *Heath v. Heath,* 132 N.C. App. 36, 38, 509 S.E.2d 804, 805 (1999).

Affirmed in part, reversed in part, and remanded.

Chief Judge MARTIN and Judge GEER concur.