STEPHENS, Judge.
 

 *149
 
 Plaintiff appeals from an interlocutory order making an initial permanent child custody determination, contending that the district court erred in ordering Plaintiff and the parties' children to move back to the county where the parties lived before their separation, and to reside there in the former marital residence. We vacate the challenged order to the extent it purports to compel Plaintiff to reside in a specific county and house, because those matters fall outside the scope of authority granted to the district court in a child custody action.
 

 *150
 

 Factual and Procedural Background
 

 On 1 July 2014, Plaintiff Stasie Kanellos filed a complaint for child custody, child support, postseparation support, alimony, equitable distribution, and attorney's fees against Defendant Ioannis "John" Kanellos. The parties were married on 27 March 2007, and the union produced two children, a boy and a girl. On 25 June 2014, John moved out of the residence. The child custody matter came on for hearing on 23 September 2015, in Union County District Court, the Honorable Joseph Williams, Judge presiding. On 2 February 2016, the district court entered its child custody order.
 

 Before the marriage, John owned a restaurant in Monroe and a house located at 8220 Sunset Hill Road in Waxhaw. Both towns are located in Union County. Following their marriage in May 2007, the parties resided in the Sunset Hill Road residence. Following the birth of her children, Stasie did not work outside of the home, and, although Stasie's mother would travel from her home in Lewisville to assist with child care, attend doctor's appointments, and clean the home, Stasie provided "90% of the child care for the two children." The evidence indicated that a frequent daily routine was for John to arrive home after work, take a short nap, spend one hour with the children, and then leave to go work out at the gym. Stasie also regularly took the children to Lewisville for several days at a time. During the course of the marriage, John was discovered to be having an extra-marital relationship, and, after first trying to repair the marriage though counseling, Stasie asked John to leave the marital residence. The parties agreed that John could spend time with the children on Wednesdays and alternating weekends, Fridays to Sundays. Still, the parties' relationship
 
 *228
 
 was strained: Stasie texted John that "the kids do not give a sh*t about you and are dead to you," told John that he did not deserve the kids, and told the eldest child that his father did not want to talk to him and that John was not his father. At the time of the 23 September 2015 hearing, Stasie and the children lived with Stacie's mother in Lewisville, the children were enrolled in school there, and Stasie had obtained employment in nearby Winston-Salem. Prior to relocating to Lewisville, Stasie had discussed the move with John, who objected. John asked Stasie to allow the children to stay with him every other week during the summer, but Stasie refused. Stasie also rejected John's request for additional visitation time for beach weekends. At some point after the parties' separation, John also relocated, moving from Waxhaw, in Union County, to Charlotte, in Mecklenburg County.
 
 [1]
 

 *151
 
 John testified that the three-hour travel time to the Lewisville area made it difficult for John to attend his son's 8:30 a.m. Saturday soccer games.
 

 In its 2 February 2016 order, the district court concluded that both parties were fit and proper persons to have custody of the children, and thus, awarded the parties joint legal custody, with Stacie having primary physical custody and John enjoying visitation on alternating weekends. The court further determined that it was in the best interest of the children that they reside in Union County. Accordingly, the court ordered that Stasie and the children move back to Union County and live in the former marital residence, and that John continue to pay the mortgage and utilities for the home. From the custody order, Stasie appeals, arguing that the trial court abused its discretion by requiring that she relocate to the former marital residence in Union County. Stasie emphasizes that, at the time of the custody hearing, neither she nor John had resided in Union County for over a year, and contends that, where the children were settled in Forsyth County, the move would be highly disruptive to them.
 

 Grounds for Appellate Review
 

 Initially, we must consider whether this interlocutory appeal is properly before us. Our review of the record in this matter and pertinent case law indicates that the 2 February 2016 order from which Stasie appeals is a permanent or "final" order as to child custody, and, thus, immediately appealable under our General Statutes.
 

 "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."
 
 Veazey v. City of Durham
 
 ,
 
 231 N.C. 357
 
 , 362,
 
 57 S.E.2d 377
 
 , 381 (citation omitted),
 
 reh'g denied
 
 ,
 
 232 N.C. 744
 
 ,
 
 59 S.E.2d 429
 
 (1950). "Generally, there is no right to appeal from an interlocutory order."
 
 Flitt v. Flitt
 
 ,
 
 149 N.C.App. 475
 
 , 477,
 
 561 S.E.2d 511
 
 , 513 (2002) (citations omitted). However, in 2013, our General Assembly enacted section 50-19.1, which provides:
 

 Notwithstanding any other pending claims filed in the same action, a party may appeal from an order or judgment adjudicating a claim for
 
 absolute divorce, divorce from bed and board,
 
 child custody
 
 , child support, alimony, or equitable distribution
 
 if the order or judgment
 

 *152
 

 would otherwise be a final order or judgment within the meaning of
 
 [
 
 section
 
 ]
 
 1A-1, Rule 54(b), but for the other pending claims in the same action
 
 .
 

 N.C. Gen. Stat. § 50-19.1
 
 (2015). In turn, under Rule 54(b) of our Rules of Civil Procedure, "[w]hen more than one claim for relief is presented in an action, ... the court may enter a final judgment as to one or more but fewer than all of the claims ... only if there is no just reason for delay and it is so determined in the judgment." N.C. Gen. Stat. § 1A-1, Rule 54(b) (2015). A judgment with a Rule 54(b) certification from the trial court is then immediately appealable.
 

 Id.
 

 The initial question for this Court is thus whether the order from which Stasie appeals is a final order as to child custody.
 

 In one sense, all child custody orders are temporary: they are subject to modification, and they terminate once the child
 
 *229
 
 reaches the age of majority. Yet a distinction is drawn in our statutes and in our case law between temporary or interim custody orders and permanent or final custody orders.
 

 A permanent custody order establishes a party's present right to custody of a child and that party's right to retain custody indefinitely. Permanent custody orders arise in one of two ways. If the necessary parties have entered into an agreement for permanent custody, and the trial court enters a consent decree which contains that agreement, the consent decree is a permanent custody order. In all other cases, permanent custody orders are those orders that resolve a contested claim for permanent custody of a child by granting permanent custody to one of the parties. They are issued after a hearing of which all parties so entitled are notified and at which all parties so entitled are given an opportunity to be heard.
 

 In contrast, temporary custody orders establish a party's right to custody of a child pending the resolution of a claim for permanent custody-that is, pending the issuance of a permanent custody order.
 

 Regan v. Smith
 
 ,
 
 131 N.C.App. 851
 
 , 852-53,
 
 509 S.E.2d 452
 
 , 454 (1998) (citations and internal quotation marks omitted).
 

 "There is no absolute test for determining whether a custody order is temporary or final. A temporary order is not designed to remain in
 
 *153
 
 effect for extensive periods of time or indefinitely."
 
 Miller v. Miller
 
 ,
 
 201 N.C.App. 577
 
 , 579,
 
 686 S.E.2d 909
 
 , 911 (2009) (citations, internal quotation marks, and ellipses omitted). Generally, a child custody "order is temporary if either (1) it is entered without prejudice to either party, (2) it states a clear and specific reconvening time in the order and the time interval between the two hearings was reasonably brief; or (3) the order does not determine all the issues."
 
 Senner v. Senner
 
 ,
 
 161 N.C.App. 78
 
 , 81,
 
 587 S.E.2d 675
 
 , 677 (2003) (citations omitted). "If the order does not meet any of these criteria, it is permanent."
 
 Peters v. Pennington
 
 ,
 
 210 N.C.App. 1
 
 , 14,
 
 707 S.E.2d 724
 
 , 734 (2011) (citation omitted). Further, it is the satisfaction of these criteria, or lack thereof, and not any designation by a district court of an order as temporary or permanent which controls.
 
 See
 

 Brewer v. Brewer
 
 ,
 
 139 N.C.App. 222
 
 , 228,
 
 533 S.E.2d 541
 
 , 546 (2000) ;
 
 see also
 

 Woodring v. Woodring
 
 ,
 
 227 N.C.App. 638
 
 , 643,
 
 745 S.E.2d 13
 
 , 18 (2013) ("A trial court's designation of an order as 'temporary' or 'permanent' is neither dispositive nor binding on an appellate court.") (citation omitted).
 

 Where this Court has determined that a child custody order is temporary because it did not "determine all the issues[,]" the remaining, undecided issues were child custody matters such as legal custody, ongoing holiday schedules, and the scope of visitation for the noncustodial parent.
 
 See, e.g.
 
 ,
 
 id.
 
 at 644,
 
 745 S.E.2d at 18
 
 ("[The] order [appealed from] did not address [the] father's ongoing visitation, but rather provided [the] father with only three specific instances of
 
 visitation
 
 in 2010. Nor did the ... order explicitly address
 
 legal custody
 
 . Thus, the order [did] not determine all the issues and was a temporary order." (citation and internal quotation marks omitted; emphasis added));
 
 Sood v. Sood
 
 ,
 
 222 N.C.App. 807
 
 , 809,
 
 732 S.E.2d 603
 
 , 606 (holding a custody order was temporary and did not determine all the issues because "it did not resolve
 
 holidays
 
 for the indefinite future") (emphasis added),
 
 cert. denied, disc. review denied, and appeal dismissed
 
 ,
 
 366 N.C. 417
 
 ,
 
 735 S.E.2d 336
 
 (2012) ;
 
 Simmons v. Arriola
 
 ,
 
 160 N.C.App. 671
 
 , 675,
 
 586 S.E.2d 809
 
 , 811 (2003) ("The initial order in the present case does not specify
 
 visitation
 
 periods and, therefore, is incomplete and cannot be considered final." (emphasis added));
 
 see also
 

 Anzures v. Walbecq
 
 , --- N.C.App. ----,
 
 781 S.E.2d 531
 
 (2016) (unpublished),
 
 available at
 

 2016 WL 48127
 
 , 2016 N.C. App. LEXIS 26 (holding a custody order was temporary because it did not resolve holiday schedules indefinitely and covered visitation only for a brief period). On the other hand, the Court has concluded that a custody order was permanent if all issues relating to child custody had been resolved, even if other matters remained pending.
 
 See, e.g.
 
 ,
 
 Brewer
 
 ,
 
 139 N.C.App. at 228
 
 ,
 
 533 S.E.2d at 546
 
 (holding that an order was permanent
 
 *230
 
 because,
 
 inter alia
 
 , "the
 
 *154
 
 court resolved
 
 every issue dealing with custody
 
 "). Likewise, the plain language of section 50-19.1 permits immediate appeal where an order "would otherwise be a final order ..., but for the other pending claims in the same action."
 
 N.C. Gen. Stat. § 50-19.1
 
 . Thus, the clear intent of our General Assembly in enacting the statute was to permit immediate appeal of,
 
 inter alia
 
 , permanent child custody orders
 
 despite the existence of still-pending claims
 
 in the matter not related to custody.
 

 The order here resolves
 
 all issues related to child custody
 
 , providing for the parties to share joint custody, with primary physical custody to Stasie, and sets out a detailed schedule for visitation and holidays that covers the indefinite future:
 

 A. The parties are awarded Joint Custody and [the children] shall reside primarily with the Plaintiff/Mother.
 

 B. The Defendant/Father shall have visitation on alternating weekends from Friday when school is out until Monday when school takes back in and on each Wednesday evening from the time school let[s] out until 8:00pm.
 

 C. The Defendant/Father shall have four non-consecutive weeks summer visitation and select his weeks by February 1 of each year.
 

 D. The Defendant/Father is to have the children in odd numbered years from 2pm Christmas [D]ay to 2pm New Year's [D]ay; the Plaintiff/Mother is to have the children for a like time period in the odd numbered years and Defendant/Father shall have the children in even numbered years from the time school is out for the Christmas break until 2pm Christmas Day; the Plaintiff/Mother is to have the children for a like period of time in the odd numbered years.
 

 E. The Defendant/Father is to have the children on Union County Spring/Easter school break during even numbered years and odd years the fall break for [the] Union County school system.
 

 F. The children are to be with the Plaintiff/Mother Thanksgiving from [the] time school is out until 3pm Friday and the remainder of the Thanksgiving weekend with the Defendant/Father.
 

 *155
 
 G. The Defendant/Father shall in addition have the following:
 

 Visitation in odd years
 

 1. Martin Luther King, Jr. Holiday from Friday-Monday; to begin at school recess on Friday and continue until 6pm on Monday.
 

 2. Memorial Day from school recess on Friday before holiday until 6pm of Memorial Day.
 

 3. Independence Day/4th of July school recess (if school is in session) until 6pm of night before school is back in session[.]
 

 4. Minor child's birthday from school recess (if school is in session) until 8:30pm.
 

 Visitation in even years
 

 1. Easter break from school recess until 6pm of the night before school resumes.
 

 2. Labor Day from school recess until 6pm the night before school resumes.
 

 H. Mother's Day to the Mother in all years from 10am until 6pm to supersede any other Visitation. Father's Day to the Father in all years from 10am until 6pm to supersede any other Visitation.
 

 Because the order resolves
 
 all issues regarding custody and visitation
 
 , was not "entered without prejudice to either party[,]" and does not "state[ ] a clear and specific reconvening time[,]"
 
 see
 

 Senner
 
 ,
 
 161 N.C.App. at 81
 
 ,
 
 587 S.E.2d at 677
 
 , it is a permanent order and therefore immediately appealable under section 50-19.1. Accordingly, Stasie's appeal is properly before this Court on the merits.
 

 Merits of Stasie's Appeal
 

 On appeal, Stasie argues that the district "court abused its discretion by requiring [Stasie] to relocate to the former marital residence in Union County, when the undisputed evidence was that neither party had lived in Union County for over a year and the move would be highly disruptive to the children who were settled in Forsyth County with [Stasie] and her family." We agree that the portion of the district court's order purporting
 
 *156
 
 to order Stasie to reside in Union County in the former marital residence must be set aside.
 
 *231
 
 Following the custody, visitation, and holiday provisions quoted above, the court ordered:
 

 I. Until the remaining issues are heard on the merits, the children are to live in Union County, North Carolina and the Defendant/Father is to continue to pay the mortgage and utilities at the former marital residence. The Plaintiff shall return to live with the children on or before March 1, 2016.
 

 By its plain language, this portion of the order purports to order Stasie and the children to move back to Union County from their current home in Forsyth County.
 
 [2]
 
 Although the issue of whether our district courts can order a party in a child custody proceeding to relocate to a specific location is a matter of first impression in this State, the pertinent statutory and case law leads us to conclude that the district court here acted in excess of its powers. Accordingly, we vacate paragraph I of the order.
 

 Resolution of this appeal requires disentanglement of two closely related, yet distinct matters: the authority of a court in a child custody case (1) to award primary custody of a child and order visitation and (2) to control where a parent involved in a child custody matter may live. While the former is within the court's discretion, the latter is beyond the scope of the district court's authority.
 

 Chapter 50 of our General Statutes provides: "An order for custody of a minor child entered pursuant to this section shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child."
 
 N.C. Gen. Stat. § 50-13.2
 
 (a) (2015). In fulfilling this directive, a district court retains significant discretion:
 

 The statute expresses the policy of the State that the best interest and welfare of the child is the paramount and controlling factor to guide the judge in determining the custody of a child....
 

 In upholding the order of the [district] court we recognize that custody cases generally involve difficult decisions.
 

 *157
 
 The [district court] judge has the opportunity to see the parties in person and to hear the witnesses. It is mandatory, in such a situation, that the [district court] judge be given a wide discretion in making his determination, and it is clear that his decision ought not to be upset on appeal absent a clear showing of abuse of discretion.
 

 In re Stancil
 
 ,
 
 10 N.C.App. 545
 
 , 548,
 
 179 S.E.2d 844
 
 , 847 (1971) (citation and internal quotation marks omitted).
 

 However, while
 

 [i]t is well established that [district court] judges are vested with wide discretion in determining matters concerning child custody[,].... [t]he ... judge's discretion ... can extend no further than the bounds of the authority vested in the ... judge.
 
 In proceedings involving the custody ...
 

 of a minor child, the ... judge is authorized to determine the party or parties to whom custody of the child shall be awarded, whether and to what extent a noncustodial person shall be allowed visitation privileges, ... whether an order for child custody or support shall be modified or vacated based on a change in circumstances, and certain other related matters
 
 . In addition, ... judges have authority to enforce orders concerning child custody ... by the methods set forth in [our General Statutes].
 

 Appert v. Appert
 
 ,
 
 80 N.C.App. 27
 
 , 34,
 
 341 S.E.2d 342
 
 , 346 (1986) (citations omitted; emphasis added) (holding that "trial judges in this State do not have authority to condition the receipt or payment of child support upon compliance with court-ordered visitation"). In other words, in child custody cases, the General Assembly has granted our district courts broad discretion and authority to (1) award custody of a child (and enforce such awards), (2) order visitation for the noncustodial parent,
 
 [3]
 
 and (3) resolve "certain
 
 *232
 
 other related matters."
 

 Id.
 

 ;
 
 see also
 

 N.C. Gen. Stat. § 50-13.2
 
 (b) ("Any order for custody shall include such terms, including visitation, as will best promote the interest and welfare of the child.").
 

 Here, the district court determined, in its discretion, that the best interest of the children was served by awarding primary physical
 
 *158
 
 custody to Stasie, with significant visitation provided to John. That decision is not contested by either party. The question before this Court is whether ordering Stasie and the children to relocate to Union County is the type of "related matter" or "term" that forms the third major prong of a district court's authority in resolving a child custody dispute.
 

 Certainly, child custody orders may include directives that facilitate an ordered custody and visitation plan.
 
 See, e.g.
 
 ,
 
 Meadows v. Meadows
 
 , --- N.C.App. ----, ----,
 
 782 S.E.2d 561
 
 , 569 (2016) (approving term that a parent's visits be supervised and take place at a specific location to facilitate that supervision);
 
 Burger v. Smith
 
 , --- N.C.App. ----, ----,
 
 776 S.E.2d 886
 
 , 894 (2015) (approving a trial court's ruling that, during periods of scheduled visitation, the noncustodial parent could travel with the child to Malawi where he worked as a missionary);
 
 Gerhauser v. Van Bourgondien
 
 ,
 
 238 N.C.App. 275
 
 , 277,
 
 767 S.E.2d 378
 
 , 381 (2014) (noting in passing that a custody order "included provisions regarding payment for the children's travel expenses for visitation");
 
 Anderson v. Lackey
 
 ,
 
 166 N.C.App. 279
 
 ,
 
 603 S.E.2d 168
 
 (2004) (unpublished),
 
 available at
 

 2004 WL 1964880
 
 , 2004 N.C. App. LEXIS 1711 (reviewing an order of contempt where a custodial parent allegedly violated terms of a custody order requiring,
 
 inter alia
 
 , that she deliver the child to the other parent for visits and discuss those visits in a positive manner with the child). Further, district court judges regularly resolve disputes that directly implicate a child's relationship with each parent or academic and other activities.
 
 See, e.g.
 
 ,
 
 Cunningham v. Cunningham
 
 ,
 
 171 N.C.App. 550
 
 , 561,
 
 615 S.E.2d 675
 
 , 683 (2005) (approving a restriction barring the mother from using a specific babysitter who had been "interfering" with the children's relationship with their father);
 
 Elrod v. Elrod
 
 ,
 
 125 N.C.App. 407
 
 , 411,
 
 481 S.E.2d 108
 
 , 111 (1997) (holding that a district "court in a child custody proceeding is not precluded from prohibiting in some circumstances, as a condition of the custody grant, the home schooling of the children") (citations omitted);
 
 MacLagan v. Klein
 
 ,
 
 123 N.C.App. 557
 
 , 565,
 
 473 S.E.2d 778
 
 , 787 (1996) (affirming the district court's ruling regarding disputes over a child's religious training),
 
 disc. review denied
 
 ,
 
 345 N.C. 343
 
 ,
 
 483 S.E.2d 170
 
 (1997). However, we have found no case in this State wherein a district court judge purported to order a custodial parent and the minor children to move from one county to another and to live in a specific house.
 

 To be sure, our courts regularly consider the relocation (or proposed relocation) of custodial parents when deciding whether to modify existing child custody orders.
 
 [4]
 

 *159
 
 In these ... instances the question arises whether the person having custody of a child or to whom custody would otherwise be granted is to be tied down permanently to the state which awards custody.... The ... court must make a comparison between the two applicants considering all factors that indicate which of the two is best-fitted to give the child the home-life, care, and supervision that will be most conducive to its well-being.
 

 In evaluating the best interests of a child in a proposed relocation, the ... court may appropriately consider several factors including: The advantages of the relocation in terms of its capacity to improve the life
 
 *233
 
 of the child; the motives of the custodial parent in seeking the move; the likelihood that the custodial parent will comply with visitation orders when he or she is no longer subject to the jurisdiction of the courts of North Carolina; the integrity of the noncustodial parent in resisting the relocation; and the likelihood that a realistic visitation schedule can be arranged which will preserve and foster the parental relationship with the noncustodial parent.
 

 Evans v. Evans
 
 ,
 
 138 N.C.App. 135
 
 , 141-42,
 
 530 S.E.2d 576
 
 , 580 (2000) (citation and internal quotation marks omitted). As reflected in this language from
 
 Evans
 
 , where a custodial parent has moved or plans to do so and the noncustodial parent objects, our district courts have the authority to consider the factors quoted above and make an award of custody accordingly. That is, a court may determine either (1) that custody should remain with a parent who has relocated or (2) that it is in the child's best interest to switch custody to the parent who has not relocated.
 
 See, e.g.
 
 ,
 
 Green v. Kelischek
 
 ,
 
 234 N.C.App. 1
 
 , 17,
 
 759 S.E.2d 106
 
 , 116 (2014) (finding no abuse of discretion in a district "court's decision to modify the existing custody order such that [the former noncustodial parent] is entitled to school year custody of [the child] if [the former custodial parent] moves to Oregon");
 
 O'Connor v. Zelinske
 
 ,
 
 193 N.C.App. 683
 
 , 691,
 
 668 S.E.2d 615
 
 , 620 (2008) (finding no abuse of discretion in declining to change primary custody while allowing the custodial parent "the option to relocate to Minnesota. ... [where] the advantages to
 
 *160
 
 the children outweigh the disadvantages");
 
 Cunningham
 
 ,
 
 171 N.C.App. at 561-62
 
 ,
 
 615 S.E.2d at 684
 
 (finding no abuse of discretion in declining to change primary custody where the custodial parent planned a possible move out of state in the future). Thus, if a court with jurisdiction in a child custody matter believes that a parent's relocation is not in the child's best interest, its recourse is to award primary custody to the other parent, as did the court in
 
 Green,
 

 234 N.C.App. at 17
 
 ,
 
 759 S.E.2d at 116
 
 . However, district courts do not have authority to order that
 
 a parent relocate
 
 (or refrain from doing so).
 

 Our district courts may consider
 
 where each parent lives
 
 , along with any other pertinent circumstances, in determining which parent should be awarded primary custody to facilitate the child's best interest.
 
 See
 

 Blackley v. Blackley
 
 ,
 
 285 N.C. 358
 
 , 362,
 
 204 S.E.2d 678
 
 , 681 (1974) (noting that the district court "judge's concern is to place the child in an environment which will best promote the full development of his physical, mental, moral and spiritual faculties") (citations omitted). Put simply, a district court must consider the pros and cons of ordering primary custody with each parent, contemplating the two options
 
 as they exist
 
 , and then choose which is in the child's best interest.
 
 See
 

 Stanback v. Stanback
 
 ,
 
 266 N.C. 72
 
 , 76,
 
 145 S.E.2d 332
 
 , 335 (1965) ("A judgment awarding custody is
 
 based upon the conditions found to exist at the time it is entered
 
 .") (emphasis added). However, a court cannot order a parent to relocate in order to create a "new and improved" third option, even if the district court sincerely believes it would be in the child's best interest.
 

 In sum, the district court here was free to make findings of fact regarding the relative benefits to the children of living with John in Mecklenburg County or with Stasie in Forsyth County, and to rely on those factual findings in deciding which parent should have primary physical custody. If the court believed Stasie's residence in Forsyth County rendered her the less beneficial choice to have primary custody of the children, it had the discretion to award primary custody to John. However, the court acted outside the scope of its authority in purporting to compel Stasie and the children to move back to Union County and reside in the former marital residence. Accordingly, we vacate paragraph I of the order.
 

 VACATED IN PART.
 

 Judge CALABRIA concurs.
 

 Judge BRYANT concurs in result only.
 

 [1]
 

 At the hearing, John testified that he and the children would live in the former marital residence if he gained primary custody, but in his brief to this Court, John's appellate counsel states that John lived with his own parents in Charlotte at the time of the hearing.
 

 [2]
 

 As noted
 
 supra
 
 , at the time the order was entered, no party lived in Union County: the children resided with Stasie in Forsyth County and John resided in Mecklenburg County.
 

 [3]
 

 Chapter 50 also contains provisions for custody and visitation for nonparent parties, such as grandparents, in certain circumstances, but because those provisions are neither relevant nor informative in this matter, we do not discuss them herein.
 

 [4]
 

 Modification of child custody awards is a two-step process. "A court order for custody of a minor child may be modified. ... [if] the moving party shows there has been a substantial change in circumstances affecting the welfare of the minor child.... Once ... a substantial change in circumstances [is shown] ..., the ... court must determine whether a change in custody is in the best interest of the child."
 
 Browning v. Helff
 
 ,
 
 136 N.C.App. 420
 
 , 423-24,
 
 524 S.E.2d 95
 
 , 98 (2000) (citations, internal quotation marks, some ellipses, and some brackets omitted).