CALABRIA, Judge.
 

 *246
 
 Ben Jamin Meadows ("defendant") appeals from an initial custody order awarding primary and legal custody of Billy
 
 [1]
 
 to Melissa Allison Meadows ("plaintiff") and supervised visitation to defendant. We affirm.
 

 I. Background
 

 Plaintiff and defendant (collectively, "the parties") were married on 6 October 2007. The parties had one child, Billy, born on 30 September 2011. Defendant's mother, Gloria Meadows ("Intervenor") provided substantial assistance in caring for Billy for extended periods of time while plaintiff dealt with certain mental health issues. After the parties separated on 14 January 2013, plaintiff and Billy lived with plaintiff's parents and continued living with plaintiff's parents through the custody and visitation hearings, which concluded on 5 August 2014.
 

 Plaintiff filed a complaint on 14 January 2013 for post-separation support, alimony, child custody, child support, and equitable
 
 *247
 
 distribution. On 22 January 2013, the parties
 
 *563
 
 agreed in a memorandum of order that plaintiff would have temporary custody and defendant would have supervised visitation of Billy. Intervenor filed an amended motion for intervention to "pursue a custody claim for the minor child, or in the alternative, a claim for grandparent visitation."
 
 [2]
 
 In another memorandum of order that modified the prior order, defendant was to have supervised visitation with Billy for up to two hours each week at the Supervised Visitation Center in Burlington, North Carolina.
 

 Following hearings, the trial court entered an order on 16 September 2014 giving,
 
 inter alia,
 
 "primary legal and physical custody" of Billy to plaintiff, and limiting defendant's visitation rights to "supervised visitation at the [Family Abuse Services center ("FAS") ] in Burlington, North Carolina every other Sunday for up to two (2) hours." The trial court's unchallenged findings of fact relevant to this appeal are as follows:
 

 38. The minor child herein is a well-adjusted toddler with normal ailments as well as normal physical and emotional development.
 

 39. During his infancy years to current date, the minor child has been surrounded by family who love and care for him. As reasonably expected during Plaintiff's manic episodes, this same family came together to "assist" in caring for the minor child. Their effort is a testament of love and support rather than attempt to alienate the minor child from either parent.
 

 40. During the entire trial, the Defendant did not appear nor did he provide any sworn testimony as to his own fitness and best interests of the minor child herein.
 

 41. ..... The Defendant's legal counsel has had ample opportunity, however, [to] develop testimony and evidence throughout these proceedings via Plaintiff's and Intervenor's cases-in-chief.... [T]he [c]ourt was still left without sufficient evidence of the Defendant's character, temperament and abilities to support and care for the minor child herein.
 

 42. At best attempt to deduce any evidence as to Defendant's parenting abilities, the [c]ourt considered the verified pleadings of his own mother, the Intervenor[,]
 

 *248
 
 wherein she alleged and subsequently testified about a period of time when "That Defendant fully acquiesced in Intervenor's care of Little [Billy] and deferred principal caregiving duties for the child to Intervenor." Within the same pleadings, the Intervenor alleged that her son was "immature" and unable to adequately care for the minor child herein.
 

 43. Otherwise, the [c]ourt cannot assume facts not in evidence of his fitness and ability to care for this toddler beyond the existing "temporary" supervised visitation schedule and how the Defendant interacts under strict guidelines of a visitation agency such as FAS.
 

 ....
 

 45. When Plaintiff separated from Defendant, Plaintiff hired Derek Ellington with Ellington Forensics, Inc. to inspect the parties' computer and other hard drives for evidence of [Defendant's] infidelity.
 

 46. Mr. Ellington regularly reviews photos and other data images and is bound by N.C.G.S. § 66-67.4, which requires any processor of photograph images or any computer technician who, within the person's scope of employment, observes an image of a minor or a person who reasonably appears to be a minor engaging in sexual activity shall report the name and address of the person requesting the processing of the film or owner of the computer to the Cyber Tip Line at the National Center for Missing and Exploited Children or to the appropriate law enforcement official in the county in which the image or film was submitted.
 

 47. After reviewing the content and data on one of the hard drives, Mr. Ellington contacted Plaintiff's counsel, and Plaintiff's counsel contacted Creedmoor Police Department.
 

 48. After reviewing a small sample of the images on the hard drives, Detective Ricky Cates of the Creedmoor Police Department issued a search warrant to seize the computer and hard drives.
 

 *564
 
 49. During his deposition on June 19, 2013, the Defendant was specifically asked certain questions by Plaintiff's
 
 *249
 
 counsel regarding images on the computer and other hard drives seized by the police, including questions about creating pornographic images of children, and Defendant refused to answer any of the questions pertaining to that subject during ... Defendant's [d]eposition[ ].
 

 50. Intervenor does not believe that Defendant has an issue with child pornography and stated during her deposition and under oath during her testimony herein that "She would not believe it even if someone told her."
 

 51. Despite the [c]ourt's previous instructions to supervise the visits between the Defendant and minor child, Intervenor admittedly did not follow the [c]ourt's directive. Her actions under the circumstances demonstrated inconsistency with her verified pleadings of "abandonment, neglect and unfitness" as it relates to Defendant.
 

 52. The [c]ourt makes the determination that a psychological evaluation of the Defendant is necessary before unsupervised visitation occurs. The evaluation/examination should include the [c]ourt's entire record for examination by a licensed psychologist.
 

 53. Pursuant to a Memorandum of Judgment/Order entered on April 16, 2013 the Defendant was allowed certain visitation periods with the minor child that were to be supervised by and occur at the Family Abuse Services center (hereinafter FAS) in Burlington, Alamance County, North Carolina[.]
 

 54. In the interim, the [c]ourt makes the determination that pending the [c]ourt's receipt of Defendant's evaluation results, supervised visitation periods should continue at FAS.
 

 55. The [c]ourt makes the determination that the supervised visitation schedule as provided in the April 16, 2013 Memorandum of Judgment/Order provides reasonable visitation privileges for the Defendant absent any evidence regarding his parenting abilities beyond the said pre-existing temporary arrangements.
 

 Based upon these findings, the trial court concluded in relevant part:
 

 3. It is in the best interest of the minor child herein that his primary legal and physical custody be with the Plaintiff.
 

 *250
 
 4. The Defendant is entitled to access and reasonable visitation with his minor child unless this [c]ourt finds Defendant has forfeited the privilege by his conduct or unless the exercise of that privilege would injuriously affect the welfare of the child.
 
 In re Custody of Stancil,
 

 10 N.C.App. 545
 
 ,
 
 179 S.E.2d 844
 
 (1971).
 

 Based upon these findings and conclusions, the trial court ordered in relevant part:
 

 1. Primary legal and physical custody of the minor child ... is hereby placed with Plaintiff subject to supervised visitation with the Defendant herein.
 

 2. The Defendant shall exercise supervised visitation at the FAS in Burlington, North Carolina every other Sunday for up to two (2) hours.
 

 3. The Intervenor shall exercise visitation at such time as the Plaintiff deems appropriate. Otherwise, Intervenor's claims for custody and/or visitation are hereby dismissed and denied.
 

 4. The Defendant shall attend and successfully complete a mental health evaluation and follow any and all recommendations from said evaluation. Further, a licensed psychologist shall assess among other things, the Defendant's parenting abilities. The [c]ourt's future review and/or consideration of the Defendant's increased visitation shall require the [c]ourt's receipt and review of the Defendant's psychological report and parenting assessment.
 

 5. While Plaintiff's allegations of inappropriate conduct by the Defendant, specifically child pornography, were not substantiated herein[,] the [c]ourt hereby orders a complete forensic evaluation of the offer of proof regarding criminal investigations and material recovered from the Defendant's computer. The outcome of said evaluation shall be a necessary condition of any pleading
 
 *565
 
 to modify the supervised visitation herein.
 

 Defendant appeals.
 

 II. Analysis
 

 On appeal, defendant contends the trial court erred by (1) failing to "make detailed findings of fact to resolve a material, disputed issue
 
 *251
 
 raised by the evidence;" (2) determining that defendant "failed to offer any direct competent evidence for the court's consideration;" and (3) denying defendant " reasonable visitation with [defendant's] minor child without finding that [defendant] was an unfit person to visit with the child or that such visitation would injuriously affect the welfare of the child." We disagree.
 

 A. Standard of Review
 

 As an initial matter, "[t]he welfare of the child has always been the polar star which guides the courts in awarding custody."
 
 Pulliam v. Smith,
 

 348 N.C. 616
 
 , 619,
 
 501 S.E.2d 898
 
 , 899 (1998) (citation omitted). "Any order for custody shall include such terms, including visitation, as will best promote the interest and welfare of the child." N.C. Gen.Stat. § 50-13.2(b) (2015). Further:
 

 It is well settled that the trial court is vested with broad discretion in child custody cases. The decision of the trial court should not be upset on appeal absent a clear showing of abuse of discretion. "Findings of fact by a trial court must be supported by substantial evidence." Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "A trial court's findings of fact in a bench trial have the force of a jury verdict and are conclusive on appeal if there is evidence to support them." However, the trial court's conclusions of law must be reviewed
 
 de novo.
 

 McConnell v. McConnell,
 

 151 N.C.App. 622
 
 , 626,
 
 566 S.E.2d 801
 
 , 804 (2002) (internal citations omitted). Unchallenged findings of fact are binding on appeal.
 
 Thomas v. Thomas,
 
 --- N.C.App. ----, ----,
 
 757 S.E.2d 375
 
 , 378 (2014) (citation omitted).
 

 In the conclusion of defendant's brief, defendant purports to be challenging the trial court's findings of fact # 40, # 41, # 42, # 43, # 44, # 52, # 54, and # 55. However, defendant only specifically argued in the body of his brief that findings of fact # 41 and # 44 were unsupported by competent evidence. The remaining findings that defendant did not specifically argue lacked evidentiary support have been abandoned and are binding on appeal.
 
 See
 

 In re P.M.,
 

 169 N.C.App. 423
 
 , 424,
 
 610 S.E.2d 403
 
 , 404-05 (2005) (deeming findings of fact binding, although specifically challenged on appeal, because the party abandoned her appeal of those findings by "fail[ing] to specifically argue in her brief that [the findings] were unsupported by evidence");
 
 see also
 
 N.C.R.App. P. 28(b)(6) (2015)
 

 *252
 
 ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").
 

 B. Findings of Fact Unsupported by Evidence
 

 Defendant contends that two of the trial court's findings of fact are not supported by competent evidence. Specifically, defendant argues that there was no competent evidence to support the portion of finding of fact # 41 that states: "While [defendant's] attendance [at the hearing] was not required by any statute or legal argument to the [c]ourt, he failed to offer any direct competent evidence for the [c]ourt's consideration[,]" and finding of fact # 44, which states: "Other than the information provided about his participation in visitation under supervised conditions, the [c]ourt has not received any competent evidence as to his parental abilities, responsibilities, and best interest of the minor child as it relates to the minor child herein."
 

 In the instant case, defendant did offer competent evidence by introducing testimony by Jennifer Stillman, Program Coordinator with FAS, as well as by introducing the records and notes from FAS relating to defendant's interaction with Billy. According to this evidence, defendant acted appropriately when interacting with Billy and never violated any FAS guidelines during supervised visitation. In addition, defendant was deposed, and his deposition was admitted
 
 *566
 
 into evidence. Although defendant never personally appeared at the hearing, he did offer competent evidence by way of Stillman's testimony, the FAS records, and his deposition.
 

 However, even assuming,
 
 arguendo,
 
 that both findings are not supported by competent evidence, it is of no consequence to the instant case. The remaining binding findings of fact, cited above, are sufficient to support the trial court's judgment and for our review of defendant's additional arguments.
 
 See
 

 In re Custody of Stancil,
 

 10 N.C.App. 545
 
 , 549,
 
 179 S.E.2d 844
 
 , 847 (1971) ( "Immaterial findings of fact are to be disregarded.".... "It is sufficient if enough [m]aterial facts are found to support the judgment."). Therefore, we overrule defendant's argument.
 

 C. Failure to Resolve Material, Disputed Issues Raised by the Evidence
 

 Defendant contends that the trial court erred by failing to make sufficient, detailed findings of fact resolving the issues raised by the evidence of whether child pornography was found on defendant's computer. We disagree.
 

 *253
 
 As defendant correctly points out,
 

 a custody order is fatally defective where it fails to make detailed findings of fact from which an appellate court can determine that the order is in the best interest of the child, and custody orders are routinely vacated where the "findings of fact" consist of mere conclusory statements that the party being awarded custody is a fit and proper person to have custody and that it will be in the best interest of the child to award custody to that person. A custody order will also be vacated where the findings of fact are too meager to support the award.
 

 Dixon v. Dixon,
 

 67 N.C.App. 73
 
 , 76-77,
 
 312 S.E.2d 669
 
 , 672 (1984) (citations omitted). Defendant contends that the 16 September 2014 order did not resolve the issues surrounding allegations that defendant was viewing and storing child pornography on his computer.
 

 In
 
 Dixon,
 
 this Court addressed a somewhat analogous situation as follows:
 

 Plaintiff testified that defendant had started abusing the child when it was an infant, that he once observed her jabbing the child's buttocks with a diaper pin, and several times returned home from work to find defendant beating their child. Two former baby-sitters for the child gave testimony relating to the defendant's abuse of her child, and both of defendant's parents testified that defendant was too strict with her son, although they denied ever having seen evidence of mistreatment. According to a letter to the court from the Onslow County Department of Social Services, which letter evaluated each parent's fitness for custody, the department had received three child abuse reports on the defendant, two of which were substantiated.
 

 The only findings of fact potentially addressing the defendant's tendency to corporally punish her child in an abusive way is the finding that defendant enrolled in two courses designed to improve her knowledge and understanding of how to cope with physiological, psychological, nutritional and medical problems associated with child rearing, and further findings that defendant stated she now uses "less force" in dealing with her son, and that she intends to continue whatever further training might be necessary to make her a better mother.
 

 *254
 

 Id.
 
 at 78,
 
 312 S.E.2d at 672-73
 
 . The
 
 Dixon
 
 Court then reasoned:
 

 Any evidence of child abuse is of the utmost concern in determining whether granting custody to a particular party will best promote the interest and welfare of the child, and it is clear that the findings of fact at bar do not adequately resolve the issue of child abuse raised by the evidence in the record. We do not here imply that the evidence establishes that defendant is currently abusing her child, nor do we hold that any evidence of child abuse means that the abusing parent has permanently forfeited any right to ever gain custody. We do hold, however, that the nature of child abuse, it being such a terrible fate to befall a child, obligates a trial court to resolve any evidence of it in its findings of fact. This was not done and the order is
 
 *567
 
 therefore vacated and the case remanded for a new hearing on the issue of custody.
 

 Id.
 
 at 78-79,
 
 312 S.E.2d at 673
 
 . When making custody determinations, it is imperative that a trial court makes sufficient findings of fact concerning issues related to the health and safety of the children involved. Whether a parent is viewing and storing child pornography, akin to whether a parent is physically abusive, is certainly critical to a trial court's determination of whether to grant custody to a particular party and is of the utmost concern to the health and safety of a child in that parent's control.
 

 There are, however, major differences among the facts in
 
 Dixon
 
 and the facts in the instant case. In
 
 Dixon,
 
 the trial court
 
 awarded custody of the child to the person accused of the abuse
 
 and made no findings directly addressing the accusations of abuse.
 
 Id.
 
 at 75,
 
 312 S.E.2d at 671
 
 . In the instant case, the trial court did
 
 not
 
 award custody, or even unsupervised visitation, of Billy to the parent accused of the inappropriate conduct, and the trial court directly addressed the issue of the child pornography allegations. The trial court found that, because defendant refused to answer questions related to those allegations in his deposition, and because he failed to testify or present any other evidence relevant to those allegations at the hearing, the trial court had insufficient evidence from which to make a determination. Because the trial court did not have all the information it required, due in part to defendant's decision not to fully participate in the proceedings, the trial court continued to limit defendant's visitation with the child to supervised visits at FAS. The trial court clearly stated that it would revisit its imposition of limited supervised visitation once defendant obtained a full "psychological report and parenting assessment," and when the
 
 *255
 
 trial court obtained a "complete forensic evaluation of the offer of proof regarding criminal investigations and material recovered from ... [d]efendant's computer[.]"
 

 Furthermore, although "[a custody order] must resolve the material, disputed issues raised by the evidence,"
 
 Carpenter v. Carpenter,
 

 225 N.C.App. 269
 
 , 273,
 
 737 S.E.2d 783
 
 , 787 (2013), "[a] trial court's inability to determine the fitness of a parent is an adequate basis for not awarding custody to that parent."
 
 Qurneh v. Colie,
 

 122 N.C.App. 553
 
 , 558,
 
 471 S.E.2d 433
 
 , 436 (1996). The trial court's findings of fact were sufficiently detailed regarding the allegations of defendant's use and possession of child pornography, based upon the evidence the trial court had before it.
 
 Id.
 
 at 76-77,
 
 312 S.E.2d at 672
 
 . These findings are sufficient for our review of the trial court's best interests determination.
 

 Id.
 

 Therefore, we overrule defendant's challenge.
 

 D. Denial of Reasonable Visitation
 

 Defendant contends the trial court erred in "denying [him] reasonable visitation with the ... child without finding that [he] was an unfit person to visit with the child or that such visitation would injuriously affect the welfare of the child." We disagree.
 

 N.C. Gen.Stat. § 50-13.5(i) (2015) states:
 

 In any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child.
 

 This Court has reasoned:
 

 The right of visitation is an important, natural and legal right, although it is not an absolute right, but is one which must yield to the good of the child. A parent's right of access to his or her child will ordinarily be decreed unless the parent has forfeited the privilege by his conduct or unless the exercise of the privilege would injuriously affect the welfare of the child, for it is only in exceptional cases that this right should be denied. But when it is clearly shown to be best for the welfare of the child, either parent may be denied the right of access to his or her own child.
 

 *256
 

 Stancil,
 

 10 N.C.App. at 550
 
 ,
 
 179 S.E.2d at 848
 
 (citation omitted). Defendant argues that the trial court failed to find either that he had forfeited his rights to unsupervised visitation, or that unsupervised visits would
 
 *568
 
 not be in Billy's best interest. For this reason, defendant contends, the trial court was without authority to impose the restrictions on his visitation that were included in the 16 September 2014 order. However, this Court has recognized that refusal by a parent to provide information that is necessary for a trial court to make custody-related determinations can serve as a basis to deny that parent certain rights.
 

 In
 
 Qurneh v. Colie,
 
 this Court addressed the impact of a natural parent invoking his Fifth Amendment right against self-incrimination in the context of a custody hearing:
 

 The privilege against self-incrimination is intended to be a shield and not a sword. Here, the plaintiff attempted to assert the privilege as both a shield and a sword.
 

 In an initial custody hearing, it is presumed that it is in the best interest of the child to be in the custody of the natural parent if the natural parent is fit and has not neglected the welfare of the child. Plaintiff sought to take advantage of this presumption by introducing evidence of his fitness.
 
 See
 

 Wilson v. Wilson,
 

 269 N.C. 676
 
 , 677,
 
 153 S.E.2d 349
 
 , 351 (1967) (holding that in order to be entitled to this presumption, the natural parent must make a showing that he or she is fit). However, when the defendant sought to rebut this presumption by questioning the plaintiff regarding his illegal drug activity, the plaintiff asserted his fifth amendment privilege. To allow plaintiff to take advantage of this presumption while curtailing the opposing party's ability to prove him unfit would not promote the interest and welfare of the child. N.C. Gen.Stat. § 50-13.2(a)(1995).
 

 122 N.C.App. 553
 
 , 558,
 
 471 S.E.2d 433
 
 , 436 (1996) (some citations omitted). The
 
 Qurneh
 
 Court went on to hold:
 

 In a related argument, plaintiff contends that the trial court improperly concluded that it could not determine plaintiff's fitness.
 
 A trial court's inability to determine the fitness of a parent is an adequate basis for not awarding custody to that parent.
 
 In this State, evidence of a parent's prior criminal misconduct is relevant to the question of the parent's fitness. Due to the plaintiff's refusal
 
 *257
 
 to answer questions regarding illegal drug use, trafficking and other drug involvement, the trial court was unable to consider pertinent information in determining plaintiff's fitness. As a policy matter, issues such as custody should only be decided after careful consideration of all pertinent evidence in order to ensure the best interests of the child are protected. Plaintiff's decision not to answer certain questions relating to his past illegal drug activity by invoking his fifth amendment privilege prevented the court from determining his fitness and necessitated the dismissal of his claim.
 

 Id.
 

 at 558-59
 
 ,
 
 471 S.E.2d at 436
 
 (citations omitted) (emphasis added).
 

 In the instant case, as in
 
 Qurneh,
 
 defendant is attempting to use his unwillingness to provide certain evidence to the trial court, mainly through his refusal to testify regarding the child pornography allegations, as a means of attacking the lack of such evidence to support the order. We hold that the trial court did not err in making its visitation determinations based upon its inability to determine defendant's fitness as a parent.
 

 Id.
 

 We again note that the trial court has clearly stated in its order that it will revisit the issue of visitation once defendant has obtained a psychological evaluation and a parenting assessment, and once the court obtains the results of "a complete forensic evaluation of the offer of proof regarding criminal investigations and material recovered from [d]efendant's computer." Therefore, defendant's argument is overruled.
 

 E. Correction of Clerical Error
 

 Defendant contends the trial court erred by reducing his supervised visitation privileges to a greater degree than those privileges that the parties agreed to in the 16 April 2013 memorandum order. Specifically, defendant challenges the trial court's finding of fact # 55, which provided that "the supervised visitation schedule as provided in the April 16, 2013 Memorandum of Judgment/Order provides reasonable visitation privileges for [defendant]," and its corresponding order that defendant "shall exercise supervised visitation
 
 *569
 
 at the FAS in Burlington ... every other Sunday for up to two (2) hours."
 

 The 16 April 2013 visitation schedule provided for "supervised visitation for up to two hours each week[.]" Those visits were ordered "every other Sunday and every other Thursday so that [defendant] has up to two hours each week." In its finding of fact # 55, the trial court
 
 *258
 
 determined that this schedule provided reasonable visitation for defendant. However, the trial court ordered in the decretal portion of its order that defendant "shall exercise supervised visitation at the FAS in Burlington, North Carolina every other Sunday for up to two (2) hours." Because we can discern no reason why the trial court would restrict defendant's visitation schedule any further, we assume this item in the decretal portion of the trial court's order was a clerical error. Therefore, we remand this portion of the order for the limited purpose of correcting this error.
 

 III. Conclusion
 

 The trial court properly entered an initial custody order awarding primary and legal custody of Billy to plaintiff and supervised visitation to defendant, until such time as the court is able to gather more evidence of defendant's parenting abilities.
 

 First, even if the findings of fact challenged by the defendant were unsupported by competent evidence, those findings were immaterial in light of the remaining findings that were binding on appeal. Second, the trial court's findings of fact relating to the issue of child pornography were sufficiently detailed based upon the incomplete evidence presented to the trial court, due in part to defendant's inability to participate in the proceedings. Although the issue of defendant allegedly viewing and storing child pornography certainly is critical in determining Billy's best interest, resolution of this issue was not possible because the investigation was incomplete and defendant refused to testify. The resolution of the issues raised by the allegations of child pornography were not required prior to the trial court granting primary custody to plaintiff and continued
 
 supervised
 
 visitation to defendant. Third, while defendant was not required to attend the custody hearings, the trial court had authority to base its custody determination in part on its inability to determine defendant's fitness as a parent, which was caused by defendant's failure to participate fully in the proceedings and, specifically, defendant's refusal to answer questions regarding the allegations of child pornography.
 

 Significantly, the trial court invited defendant to return to court for a modification of the initial custody order once it was able to gather more evidence of defendant's character, temperament, and ability to support and care for Billy. Defendant's modification depends upon his completion of a mental health evaluation and a parenting assessment. Another condition for the modification is a forensic evaluation of the offer of proof regarding the criminal investigations of child pornography
 
 *259
 
 and related material recovered from defendant's computer. We affirm the trial court's initial custody order and remand for the limited purpose of correcting a clerical error in its order to reflect the correct supervised visitation schedule of 16 April 2013.
 

 AFFIRMED; REMANDED FOR CORRECTION OF CLERICAL ERROR.
 

 Judges BRYANT and ZACHARY concur.
 

 [1]
 

 A pseudonym is used to protect the minor's identity.
 

 [2]
 

 Intervenor is not involved in this appeal.